## NORTH ELECTRIC MFG. CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 8742.

Circuit Court of Appeals, Sixth Circuit.

Nov. 12, 1941.

Clare M. Vrooman and Vernon R. Burt, both of Cleveland, Ohio (Garfield, Cross, Daoust, Baldwin & Vrooman, of Cleveland, Ohio, on the brief), for petitioner.

Philip G. Phillips, of Cincinnati, Ohio (Robert B. Watts, Laurence A. Knapp, Ernest A. Gross, Lewis M. Gill, and Nanette Dembitz, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This case arises upon petition to review and set aside an order issued against petitioner finding that it has interfered with, restrained and coerced its employees in violation of § 8(1) of the National Labor Relations Act, 29 U.S.C.A. § 158(1), and ordering the petitioner to cease and desist from its unfair labor practices and to post the usual notices. In its answer to the petition the Board requests that the order be enforced.

Petitioner, a resident of Galion, Ohio, employs from 300 to 600 employees, and does an interstate business in manufacturing automatic electric selective apparatus, its principal product being automatic telephone systems. The case presents in the main a question of fact, and upon all but one of the main issues the findings of the Board are supported by substantial evidence. These findings therefore are controlling upon this court.

One unusual feature of the case, however, merits particular attention. In March, 1938, officials purporting to represent the International Association of Machinists Local No. 1151 (hereinafter called the union), wrote the petitioner that it had been authorized by approximately seventy per cent. of the employees "that come within" its "jurisdiction" to represent them, and asked for a meeting to negotiate an agreement. The petitioner, which contends that it was not certain that the union represented seventy per cent. of its employees, nor just what group of the employees the union claimed to represent, in response to the union's communication answered, among other things, that several questions required clearing before a conference with the bargaining committee or discussion of the proposed agreement could be held, but acceded to the request for a conference.

The president of the petitioner, Frank McBerty, directed that some of the older employees be asked to attend the conference. He directed specifically that they be selected "without any reference to whether they were suspected of being labor union people or not, making no discrimination of that sort." In addition McBerty installed a microphone in his office and wired it to a loud speaker in an adjacent room where any employee in the plant was permitted to listen to the entire proceeding. When the union officials came to the plant they demanded that the eleven employees present in the office be excluded from the conference. This demand was refused by McBerty, and as the Board found, the meeting, which lasted about an hour and a half, was devoted in large part to an argument between the petitioner and the union as to the propriety of the petitioner's action in bringing in the employees. McBerty explained their presence and stated that other employees would be able to follow the proceedings through the loud speaker, and declared that these arrangements were made in order that the employees could learn in their own way what was going on. The union in no way questioned the truth of these statements but absolutely refused to confer in the presence of the employees. The attitude of the union was expressed by one of the delegation who said "If you want these people to find out as to what goes on * * * let them come to the union meeting and find out." McBerty stated, "I have heard a good many representations that indicate that the truth does not always come out in the union meeting discussions." However, repeated statements were made by McBerty and his attorney as to the willingness of the petitioner to negotiate with the union when the petitioner knew that the union in fact represented a majority of the employees, and the principal union representative, when the conference was broken up, said: "We don't say that you people refused to bargain. We don't say that." The Board concluded that the petitioner had no right to select a group of employees to attend the conference with the union for the purpose of observing and reporting the proceedings to their fellow employees. It declared:

"This action on the part of the respondent [petitioner here] was in complete derogation of the right of employees to self-organization and to bargain collectively

through representatives of their own choosing. Such interference by an employer with the exercise of rights guaranteed by the Act may not be excused on the ground of the allegedly beneficent motives of the employer. Moreover, the respondent was completely unwarranted in utilizing its meeting with the Union to undermine the confidence of the union members in their representatives and to dissuade other employees from becoming members of the Union. It is apparent, and we find, that this was the effect of and the respondent's purpose in securing and insisting upon the presence of the 'observers,' in installing the loud-speaker system and inviting employees to listen in upon the conference, and in casting aspersions on the Union's representatives. Such conduct was expressive of hostility toward the Union, and indicated that the respondent would not meet the Union as party of equal dignity, status, and responsibility even if satisfied that it had been designated by a majority of the employees."

The Board concluded that it was unlawful for the petitioner to question the union's jurisdiction over the employees in its plant; that the choice of a representative by the employees is to be decided solely by the employees themselves and their employer may not refuse to bargain collectively with such a representative. In substance, the Board held that the petitioner intended by the presence of observers and the installation of loud speakers to insure wide-spread knowledge among the employees of its position, and thus created in the minds of employees doubt and uncertainty as to the utility of their joining the union or designating it as their representative, and that this discouraged membership in and designation of the union as collective bargaining representative. These acts were therefore held unlawful.

■■■ These conclusions are unwarranted by the terms of the Act. The purpose of the Act is to protect the workingman in his right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of his own choosing and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. Title 29, § 157, U.S.C., 29 U.S.C.A. § 157. Nothing in the Act enjoins the absence of the employees from the negotiations where, as here, the material question of the union's authority to represent the employees was under discussion. While only eleven employees were present at the conference in the office, through the loud speaker arrangement the privilege of listening was extended to any employee who cared to avail himself of it. This was not a case where there had been any contest between two employee groups, and it was not claimed by the union in the conference that the employees were present for the purpose of obstruction or espionage, nor that they were antagonistic to this particular union, or to each other. Title 29, U.S.C., § 159(a), 29 U.S.C.A. § 159(a), provides that representatives selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purpose, "shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining" in respect to conditions of employment. The union, then, is agent and attorney for the employees in the appropriate unit after it has been designated as bargaining agent. So far from its being illegal, as decided by the Board, for the employees to listen in at this meeting, it was proper that they should attend the negotiations between their proposed agent and attorney and the employer. The employer has the right to inform the workmen of the state of negotiations. [National Labor Relations Board v. Express Publishing Co., 5 Cir., 111 F.2d 588, reversed on other grounds 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; National Labor Relations Board v. International Shoe Co., 8 Cir., 116 F.2d 31] and this direct method of giving information, under this record, was not a violation of the Act.

■■■ The Board, in discussing the demand of the petitioner that the matter of union representation "be cleared" before negotiating a contract, states that petitioner had no right to deny union representation, ignoring the fact that the union offered no evidence whatever that it had jurisdiction over a majority either of the plant or of any department. It is not a violation of the Act for the management to desire reasonable proof of majority unionization and an authentic selection of a bargaining agent. On the contrary, the refusal of an employer to recognize the union as representative of the employees without an election is not an unfair labor practice. National Labor Relations Board v. Empire Furniture Corp., 6 Cir., 107 F.2d 92; Texarkana Bus Co., Inc., v. National Labor Relations Board, 8 Cir., 119 F.2d 480. Cf. Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 548, 549, 57 S.Ct. 592, 600, 81 L.Ed. 789. As

held in that case with reference to the Railway Labor Act, the National Labor Relations Act, 29 U.S.C.A. § 150 et seq., imposes the affirmative duty to treat only with the true representative, and "hence the negative duty to treat with no other." It is not claimed that the petitioner attempted to dictate an arbitrary method for the proof of representation. Cf. National Labor Relations Board v. Moltrup Steel Products Co., 3 Cir., 121 F.2d 612. The presence of employees and the opportunity afforded all the workmen to secure accurate, first-hand information as to what happened at the first meeting was not only a natural, but a legitimate method of attempting to secure an answer to the questions (1) whether the employees were actually represented, or (2) desired to be represented by this particular union.

The cease and desist order is extremely general. So far as material, it reads as follows:

"Upon the basis of the above findings of fact and conclusions of law, and pursuant to Section 10(c) of the National Labor Relations Act [29 U.S.C.A. § 160(c)], The National Labor Relations Board hereby orders that the respondent, The North Electric Manufacturing Company, Galion, Ohio, its officers, agents, successors, and assigns, shall:

"1. Cease and desist from:

"(a) In any manner interfering with, restraining, or coercing its employees in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

Although we reject the findings and conclusions of the Board upon this phase of the case as not supported by the evidence and contrary to law, the remaining findings of fact and conclusions are sufficient to sustain the order. However, since the order refers back to and incorporates all of the findings of fact, including those described in this opinion, the question of the legality or illegality of the employer's acts in permitting the presence of the employees at this conference cannot be ignored, since otherwise the findings of the Board may become an erroneous and important precedent. Endorsement by this court of the order proper without rejection of findings which

are unwarranted and lend no support to it would invite misconstruction in subsequent enforcement proceedings in other cases as well as in the present one.

Insofar as the petition to review attacks the error of the Board in making and issuing that portion of the decision and order designated Findings of Fact—III, The unfair labor practices—B4. April 9, 1938 conferences, the petition is granted and the decision and order upon this phase of the case is set aside, vacated and annulled. As to other phases of the case the petition is denied. A decree will be entered for the enforcement of the order in accordance with this opinion.