IOB et al. v. LOS ANGELES BREWING CO., Inc., et al.

No. 12247.

United States Court of Appeals Ninth Circuit.

June 21, 1950.

Henry B. Ely, Los Angeles, Cal., for appellant.

O'Melveny & Myers, W. B. Carman, Jr., and W. W. Alsup, all of Los Angeles, Cal., for appellee, Los Angeles Brewing Co.

P. H. McCarthy, Jr., F. Nason O'Hara and Herbert S. Johnson, all of San Francisco, Cal., for other appellees.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Appellants Iob, Dobbs and Ullrich are ex-servicemen who claim to have been deprived of reemployment rights guaranteed to them as World War II veterans by the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A. Appendix, § 301 et seq., and the Service Extension Act of 1941, 50 U.S.C.A. Appendix § 351 et seq. They appeal from an adverse decision upon a petition for damages and for the declaration and enforcement of their asserted reemployment rights.[1]

---

1. Appellants' original petition named Los Angeles Brewing Company as sole respondent. After trial on such petition and indications of the court's opinion stated from the bench, appellants filed a motion for new trial with leave to add parties. The motion was granted "for the purpose of enabling the U. S. Attorney [representing petitioners] to bring into the case the appropriate labor organization." By appellants' amended petition thereupon filed the following respondents were added: Joint Local Executive Board of California; Bottlers Local Union No. 896 and its president and secretary; Brewers, Maltsters & Yeast Workers Local Union No. 893 and its president and secretary. These additional respondents have filed a separate appeal brief herein asserting certain contentions apparently in anticipation of things to come for they state in conclusion: "However, additional respondents respectfully submit that the decision of the district court was not erroneous * * *." We need not consider their

Respondent, Los Angeles Brewing Company, within one year after appellants had been, upon their return from honorable service restored to preservice positions, discharged them from such positions and employment pursuant to union demand for the sole reason that they were not members of co-respondent unions in conformity with a closed shop contract in force between the employer and the referred to unions. Appellants, members in good standing of certain unions other than those just referred to, refused the solicitations of the co-respondent unions to join them. There is nothing in the record to indicate that appellants could not have retained their membership in the unions to which they belonged after joining the union possessing the closed shop contract. The Company was wholly satisfied with appellants' work and would have continued to employ them except for the union problem.

Appellants belong to local unions [2] affiliated with the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America. Prior to July 28, 1946, bottlers and brewers [3] employed by the Los Angeles Brewing Co., pursuant to union commitments [4] were required to be members of such local unions. Sometime prior to the above mentioned date a majority of such employees, because of the International Union's affiliation with the C. I. O.,[5] resigned from such locals and organized and joined co-respondent local unions [6] affiliated with the International Brotherhood of Teamsters, Chauffeurs and Warehousemen and Helpers of America (A. F. L.). The Joint Local Executive Board of California,[7] a labor organization comprising the last mentioned local unions and others for collective bargaining purposes negotiated with the Los Angeles Brewing Company among other brewery companies and obtained a written closed shop agreement effective July 28, 1946.[8] Realizing the threat to its position as collective bargaining agent for the employees of respondent company, the International Union (C. I. O.) sent to the Los Angeles Brewing Company

contentions for reasons which will hereinafter appear.

2. Brewers, Maltsters & Yeast Workers Local Union No. 7 and Bottlers Local Union No. 293.

3. Respondent company had employed appellant Iob as a brewer and appellants Dobbs and Ullrich as bottlers.

4. For some time prior to May 15, 1936, the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America were in a closed shop contractual relationship with the Los Angeles Brewing Company. At that time such contract was terminated. Thereafter until July 28, 1946, the Los Angeles Brewing Company refused to enter into a written contract for a closed shop because such union demanded a closed shop for drivers. Negotiations, however, early culminated in formulation of certain "Working Rules" observable on a day to day basis. Such "Rules" contained the closed shop provisions which were observed until July 28, 1946.

5. Until about October 16, 1941, the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America was affiliated with the A. F. L. At that time it was suspended from the A. F. L., for a time was independent, and about July 18, 1946, became affiliated with the C. I. O.

6. Brewers, Maltsters and Yeast Workers Local Union No. 893 and Bottlers Local Union No. 896.

7. The Joint Local Executive Board of California is an affiliate of the International Brotherhood of Teamsters, Chauffeurs and Warehousemen and Helpers of America (A. F. L.) and is made up of local unions of like affiliation in the California brewing industry.

8. It is not disputed but that a closed shop agreement is valid in California. Compare Algoma Plywood & Veneer Co. v. Wisconsin Empl. Rel. Board, 1949, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691; Colgate-Palmolive-Peet Co. v. N. L. R. B., 1949, 338 U.S. 355, 70 S.Ct. 166.

The July 28, 1946, contract remained in effect until April 1, 1947, at which time a new contract was entered into by the Los Angeles Brewing Company with the Joint Local Executive Board of California and among others Locals 893 and 896. The April 1, 1947, contract contained substantially identical closed shop provisions but it is not involved here because appellants were discharged pursuant to the provisions of the July 28th contract.

on July 26, 1946, a telegram wherein such union's claim to recognition as majority representative was formally noticed and wherein it was demanded that the company refrain from negotiating with any other union or union representative.[9]

The International Union (C. I. O.) thereafter on August 22, 1946, filed a petition for an election with the National Labor Relations Board which body on February 28, 1947, after hearing and consideration thereof ordered an election. 72 N.L.R.B. 1005. An election was had resulting in favor of the International Brotherhood (A. F. L.) but was later set aside by the Board. 74 N.L.R.B. 146.[10] Subsequent to all of the above narrated events, the district court in the instant matter entered the decision here appealed from.

As indicated appellants before entering the service were employed by the Los Angeles Brewing Company and belonged [and still belong] to such local unions as were required by then existing union commitments. Appellants Dobbs and Ullrich returned from service and were restored to their positions as bottlers with the company prior to the execution and effective date of the closed shop contract with the Joint Local Executive Board (A. F. L.). Appellant Iob returned and was restored to his pre-service employment as a brewer subsequent to both the effective date of such closed shop contract (A. F. L.) and the date of filing the above mentioned petition for election. All three appellants were discharged in the interim between the date of filing and the date of the Board's action upon such petition for election.

For convenience hereinafter we shall refer to the International Union of United Brewery, Flour, Cereal and Soft Drink Workers of America (C. I. O.) and its local affiliates singularly as the "Brewery Workers' Union," to the International Brotherhood of Teamsters, Chauffeurs and Warehousemen and Helpers of America (A. F. L.) and its local affiliates singularly as the "Teamsters' Union," to the Los Angeles Brewing Company as the "employer," and to the National Labor Relations Board as the "Board".

The cause was tried to the district court upon the theory that such discharges, because they occurred during the veteran's statutory re-employment year at the demand of a union having a closed shop contract with the employer, were "without cause" and therefore within the prohibition contained in Section 8 (e) of the Selective Training and Service Act of 1940 as amended, 50 U.S.C.A. Appendix, § 308 (e), and Section 7 of the Service Extension Act of 1941, 50 U.S.C.A. Appendix, § 357, and that in any event the closed shop contract in question did not by its terms require union membership of returned veterans. Although these issues are raised by the statement of points on appeal filed by appellants, they were not argued by appellants either in their briefs or orally and therefore we deem them abandoned. See Smith v. Royal Ins. Co., 9 Cir., 1937, 93 F.2d 143; Western National Ins. Co. v. LeClare, 9 Cir., 1947, 163 F.2d 337. However, we state that the first issue mentioned above has been laid at rest by the Supreme Court in the recent case of Aeronautical Industrial District Lodge 727 v. Campbell, 1949, 337 U.S. 521, 69 S.Ct. 1287. See also Dougherty v. General Motors Corp., 3 Cir., 1949, 170 F.2d 561, and Conner v. Pennsylvania R. Co., D.

---

9. The telegram referred to in the text reads as follows:

· "We have received information that our local union officials in San Francisco have divorced themselves from our organization and are attempting to take the membership, employees of your firm, over to the Teamsters' Union.

"This is formal notice that our union represents the majority of your employees in all departments. You are hereby notified not to negotiate with any other union or representative thereof for your employees. Eugene J. McCann is the only authorized representative of this International Union in California, and he is prepared to meet with you at mutually convenient times and place to negotiate written contract covering all your employees.

"By Order of the General Executive Board. * * * *"

· 10. The reasons for which such election was set aside are not material to our determination.

C.Cir., 1949, 177 F.2d 854. And, as to the second issue, we have read the contract and find explicitly expressed the requirement of affiliation.

Appellants' argument on this appeal is that a union and an employer can not justify a discharge of an employee for union non-affiliation where the closed shop agreement invoked was executed at a time when there was a question concerning whether such union or a rival union was the proper collective bargaining agent for the employees and that the district court had no jurisdiction "to determine that one of the two competing labor unions was the representative of all employees, in the face of a decision of the National Labor Relations Board that at the time in question no labor organization represented the employees."

Respondent company contends that this court will not review a case on appeal on a theory different from that on which it was tried in the trial court.

While appellants' amended complaint alleges the invalidity of the closed shop in question [11] and the answers of respondents deny such allegation, the trial proceeded on the conceded assumption, for purposes of determining the issues heretofore mentioned, that the contract was validly made. We need not decide whether the district court in a suit of this nature involving servicemen's reemployment rights has the power to determine the validity of a closed shop contract, because of the narrowness of appellants' contention on this appeal. Such narrow contention is that the Board, before entry of the district court judgment here appealed from, had held in its decision and direction of election, Matter of Acme Brewing Co., 1947, 72 N.L.R.B. 1005, that at the time of making the July 28, 1946, closed shop contract no labor organization represented a majority of respondent company's employees for purposes of collective bargaining. Therefrom it is argued that such closed shop contract was not within the proviso to Section 8(3) of the National Labor Relations Act and was invalid; and that the subject discharges having been made pursuant to an invalid contract were "without cause." [12]

11. Appellants alleged the following:

"All eight of said respondents have construed and applied said July 28, 1946, contract as a 'closed shop' agreement, effective at once against all bottlers and brewers in the Company's employ, who might not be members of said Teamsters Locals 896 or 893, including returned veterans of the armed forces during the reemployment year provided for in Section 8 of the Selective Training and Service Act of 1940. Petitioners are advised, believe and state that said agreement of July 28, 1946, is not, and never has been, legally effective as a 'closed shop' contract against either reemployed veterans, with reemployment rights, or against workmen employed by the Company as bottlers or brewers on and before July 28, 1946. Petitioners are further informed, believe and state that at the time the said contract was entered into, the National Labor Relations Board had not certified the Teamsters Council as the collective bargaining agent for any portion of the Company's employees; and that said Board had not, and did not, prior to December, 1946, determine what unit of the Company's employees might be a proper unit for collective bargaining with the Company, through such Teamsters Council; and that said Board has not yet certified said Teamsters Council as the collective bargaining agent for the Company's employees. They accordingly represent that said Teamsters Council had no right to enter into a 'closed shop' contract as the purported 'representative' of the Company's employees in July 28, 1946, as the Company well knew."

12. It is to be noted that the Brewery Workers' Union has taken steps other than the petition for election to combat the encroachment of the Teamsters' Union in the California brewing industry. In August, 1946, such union sought to invoke the processes of the California state courts by suing to compel the employer to employ only members in good standing with it in conformity with its agreement with the employer. The state court refused to take such action because of the existent dispute over representation. Members of the Brewery Workers' Union thereafter went on strike and picketed the employer's plant from approximately September 23, 1946, to approximately March 27, 1947. Notwithstanding, members of the Teamsters' Union continued to work and operate respondent company's brewery. The Brewery Workers' Union also filed un-

The above mentioned decision and direction of election, therefore, is the focal point of appellants' argument and of our inquiry. That is: Did the Board in effect determine that the closed shop contract was invalid? If it did not, we must affirm.

Sections 8 and 9 of the National Labor Relations Act at the time in question provided in their pertinent parts that:

Section 8:

"It shall be an unfair labor practice for an employer— * * *

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in [sections 151-166 of this title] or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in [sections 151-166 of this title] as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 159 (a) of this title, in the appropriate collective bargaining unit covered by such agreement when made. * * *" 29 U.S.C.A. § 158.

Section 9:

"(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of sections 151-166 of this title, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

"(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 160 of this title or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives." 29 U.S.C.A. § 159.

We believe it manifest that the Board could not have passed upon the validity of the subject closed shop contract in proceedings for an election. The Supreme Court has said: " * * * the Act [N.L.R.A.] gives no express authority to the Board to invalidate contracts with independent labor organizations. That authority, if it exists, must rest upon the provisions of Section 10(c) [of the Act pertaining to instances of unfair labor practices]." Consolidated Edison Co. v. N. L. R. B., 1938, 305 U.S. 197, 235, 59 S.Ct. 206, 219, 83 L.Ed. 126. But appellants' contention is not opposed to such conclusion. They argue that the Board in finding "that a question affecting commerce has arisen concerning the representation of employees of the Employer" [72 N.L.R.B. at 1012] thereby made a determination that no labor organization represented a majority of the employees of respondent company on the crucial day, July 28, 1946, and that such determination is evidenced by the ruling of the Board that the closed shop contract did not bar an election.

fair labor practice charges against the employer alleging that the subject discharges were unfair labor practices and that the closed shop contract of July 28, 1946, was invalid under the National Labor Relations Act, 29 U.S.C.A.

§ 151 et seq. These charges were dismissed by the 21st Regional Office of the Board and such action was affirmed on appeal to the General Counsel of the Board.

However, the Board itself has said in representation proceedings: "It should be noted that we are not here confronted with the necessity of deciding, upon the testimony and documentary evidence in the record, whether on the date of an alleged refusal to bargain, the union represented a majority of the employees in the appropriate unit. That question could not be answered by an election, for the result of a present election would not show the union's authority on the particular past date in question. * * * We are here concerned with establishing representatives for future bargaining purposes, and under the circumstances we think that such future bargaining will be best effectuated by holding an election by secret ballot." Matter of The Cudahy Packing Company, 1939, 13 N.L.R.B. 526, 532, note 8. This court has held that the employer's entry upon a closed shop contract may constitute a refusal to bargain with the proper representative of his employees, hence an unfair labor practice. See N. L. R. B. v. National Motor Bearing Co., 9 Cir., 1939, 105 F.2d 652.[13]

It is true that at the hearing before the Board upon the Brewery Workers' Union's petition for election the intervenor [the Joint Local Executive Board of California] urged among other things that the July 28, 1946, closed shop contract was a bar to the proceedings because the petition was filed too late [the petition was filed August 22, 1946, 27 days after such union's claim to recognition]. See Matter of General Electric X-Ray Corp'n, 1946, 67 N.L.R.B. 997. The Board, in ruling upon such contention stated [Acme Brewing Co., 1947, 72 N.L.R.B. 1005 at 1012]: "Under our ruling in that case [the General Electric X-Ray case] where a petition is filed more than 10 days after a *naked* claim to representation has been made, an agreement, otherwise valid, which is executed in the interval between the claim and the filing of the petition, constitutes a bar to an election. * * * But the Petitioner's [Brewery Workers' Union]

claim cannot be said to have been 'naked' * . * .*."." It was ruled that the July 28th contract therefore was not a bar.

■ It is clear from National Labor Relations Board rules that the Joint Local Executive Board of California had no other basis to urge that an election was barred. While Section 9(c) contains no such limitation upon the Board's power to order an election, the Board has recognized and "written into the statute" a rule based on policy considerations that existing labor agreements may bar election proceedings prior to the near termination of the contract term. See Fay v. Douds, 2 Cir., 1949, 172 F.2d 720, 724; Matter of Mill B, Inc., 1942, 40 N.L.R.B. 346. But such "contract bar" is not applied where prior to the effective date of the contract either the rival union files a petition for an election or the rival union, as is the case here, notifies the employer of its claim to recognition as the majority representative. See Matter of Mill B, Inc., supra, and the cases therein cited; Matter of Portland Lumber Mills, 1944, 56 N.L.R.B. 1336; Matter of The Texas Company, 1945, 64 N.L.R.B. 653.

A reading of the decision in Matter of Acme Brewing Company, supra, clearly and definitely discloses that the Board in no way ruled upon the validity of the closed shop contract of July 28, 1946. It, in effect, assumed the validity of such contract for the purposes of the argument made by the intervenor. And, it is as clear that the Board did not in any wise attempt to rule upon the Teamsters' Union's authority to act as majority representative on July 28, 1946.

■ Appellants' amended petition alleges that the employer had no right to enter upon the closed shop contract with the Teamsters' Union because the Board had not certified the Teamsters' Union as the collective bargaining agent of respondent company's employees nor had it determined the appropriate unit for collective bargain-

13. Compare Colgate-Palmolive-Peet Co. v. N. L. R. B., 1949, 338 U.S. 355, 70 S.Ct. 166. The Board may not adopt a policy whereby a closed shop agreement validly executed under the proviso to Section 8

(3) of the Act shall not be a defense to charges of unfair labor practices on the part of the employer in complying with such contract.

ing. But, an employer's duty to bargain under the N.L.R.A. with a particular union may arise in absence of certification. In other words, while the employer may in some circumstances, not involved here, request an election (see International Brotherhood v. International Union, 9 Cir., 1939, 106 F.2d 871), he may not require in every situation that certification of a union precede his dealing with it as the proper collective bargaining agent. "The contention that bargaining was not mandatory until the Board had accredited [the union] as bargaining agent is frivolous. An employer is under a duty to bargain as soon as the union representative presents convincing evidence of majority support." N.L.R.B. v. Dahlstrom Metallic Door Co., 2 Cir., 1940, 112 F.2d 756, 757. See also N. L. R. B. v. Piqua Munising Wood Products Co., 6 Cir., 1940, 109 F.2d 552; N. L. R. B. v. Somerset Shoe Co., 1 Cir., 1940, 111 F.2d 681. Compare North Electric Mfg. Co. v. N. L. R. B., 6 Cir., 1941, 123 F.2d 887. "The Act [N.L.R.A.] is clear in intent, and it has been too well-established to require extended discussion, that election and certification proceedings are not the only method of determining majority representation * * *." Matter of L. B. Hartz Stores, 1946, 71 N.L.R.B. 848, 871. It follows that if the employer is deemed to be under a duty to bargain with an uncertified union which has presented convincing evidence of majority representation for collective bargaining purposes the employer does not commit an unfair labor practice by concluding a closed shop agreement with such union, that is, such union is "the representative of the employees * * * in the appropriate collective-bargaining unit covered by such agreement when made" [quoting from the proviso to Section 8(3)]. Compare Wallace Corporation v. N. L. R. B., 1944, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216.

 It follows in these circumstances that, if at the time of the instant closed shop contract's execution, convincing evidence of majority support did not vouchsafe the Teamsters' Union's claim at that time to represent a majority, a discharge of a returned serviceman within the statutory reemployment year on the sole ground of non-affiliation would be "without cause" as those words are used in the statute. Compare Kemp v. John Chatillon & Sons, Inc., 3 Cir., 1948, 169 F.2d 203. We do not intend to pass upon whether or not there was such convincing evidence here [14] but simply note that the Board itself has declined to take hold of charges that the making of the July 28, 1946, contract was an unfair labor practice.

We conclude that appellants' contentions on this appeal are untenable. In the circumstances of this case we must assume the closed shop contract to have been an existing valid agreement, and we hold that appellants were under the duty of complying with the terms thereof in asserting their right to employment in accord with the returned servicemen's employment statute.

Affirmed.

---

14. It was testified during the trial in the district court that the Teamsters' Union presented to the Los Angeles Brewing Company cards designating the union as collective bargaining agent signed by over 90% of the company's employees, as the basis for the union's demands, and that during the negotiations leading up to the execution of the closed shop contract such cards were checked.