**NATIONAL LABOR RELATIONS BOARD**

v.

**TRIMFIT OF CALIFORNIA, Inc.**

No. 13827.

United States Court of Appeals Ninth Circuit.

Feb. 25, 1954.

---

hereafter the Board, asking enforcement of its order issued against respondent, a hosiery knitting mill located in Anaheim, California.

The Board found that respondent violated § 8(a) (5) and (1) of the Labor Management Relations Act, 29 U.S.C.A. § 158(a) (1, 5), hereafter the Act, by refusing to bargain with Local 43–B, American Federation of Hosiery Workers, the duly designated representative of the majority of respondent's employees, and violated § 8(a) (3) and (1) by discriminatorily refusing to rehire four employees upon reopening of the mill after a shutdown.

Respondent does not challenge the validity of the Board's order relating to the § 8(a) (3) violation. It contends that the order should be modified by striking the provision requiring reinstatement of four named employees discriminated against because reinstatement has heretofore been offered said employees.

Compliance with provisions of a Board order is no defense to a petition for its enforcement. N. L. R. B. v. Mexia Textile Mills, 1950, 339 U.S. 563, 70 S.Ct. 826, 833, 94 L.Ed. 1067. The alleged offers of reinstatement are no defense here. N. L. R. B. v. L. Ronney & Sons Furniture Mfg. Co., 9 Cir., 1953, 206 F.2d 730.

A reading of the whole record reveals substantial evidence in support of the Board's findings that respondent refused to bargain with the union in violation of § 8(a) (5) of the Act. The Board found, and it is not disputed, that the union on and after January 22, 1951, represented a majority of respondent's production and maintenance employees, an appropriate unit for collective bargaining. On three separate occasions, January 30, February 6 and April 7, 1951, the union advised respondent that it represented a majority of the employees and demanded that respondent bargain collectively. On each of these occasions respondent refused to recognize the union or deal with it. At the January 30 meeting, respondent repre-

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Fannie Boyls, Norton J. Come, Thomas F. Maher, Attys., NLRB, Washington, D. C., for petitioner.

Knight, Gitelson, Ashton & Hagenbaugh, Max Goldenberg, Los Angeles, Cal., for respondent.

Before STEPHENS, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

We have for consideration a petition of the National Labor Relations Board,

sented that its plant was too small to be organized and advised them to come back in a year or two when the plant was larger. It is contended that the union waived or withdrew its demand for recognition by asking respondent to agree to a consent election. We find no merit in this position. The union suggested an election after it became apparent that respondent would not recognize the union. The union's demand to bargain was unequivocal and respondent's refusal equally so.

The February 6 meeting between respondent and the union at the Board's Regional Office was subsequent to the filing, by the union, of a petition for a representation election. At this meeting the union repeated its claim of majority status and its demand for recognition. This time respondent based its refusal to bargain on the ground that the union's petition for an election was poorly timed because the plant was then shut down and only two or three persons were in respondent's employ. Respondent stated that as soon as the plant reopened and the employees returned to work it would consent to an election. However, it did not disclose that it had already started notifying its employees that the plant was about to reopen and they could apply for reemployment beginning February 8. On the basis of statements made by respondent, the Field Examiner suggested that the union withdraw its petition, which it did.[1]

Upon reopening the mill, respondent offered reemployment to all but four of its former employees. On March 7, 1951, the union filed unfair labor practice charges against respondent. The Board found and respondent concedes that the four employees were discriminatorily refused reemployment because of their union activities.

On April 7, 1951, the union wrote to respondent making a third claim of majority status and requesting respondent to meet for collective bargaining. On April 12, the parties met at the Board's Regional Office. Respondent still refused to recognize the union but said that it would agree to a consent election if the union would file a petition for certification. This the union refused to do because of its policy against holding an election while an unfair labor practices charge is pending.[2] The union, as was its privilege, rejected respondent's suggestion that it withdraw its pending charge or request the Board to withhold processing it until after an election could be held.

On April 16, 1951, respondent's attorneys replied to the union's letter of April 7, 1951, demanding recognition. In this letter respondent for the first time specifically questioned the union's majority status and announced respondent's position that before it consented to an election agreement it would require some evidence that the union represented a substantial portion of respondent's employees.

Respondent contends that it had no duty to bargain until the union had established its majority status by a Board election. There is no absolute right vested in an employer to demand an election. Iob v. Los Angeles Brewing Co., 9 Cir., 1950, 183 F.2d 398. If an employer in good faith doubts the union's majority, he may, without violating the Act, refuse to recognize the union until its claim is established by a Board election. A doubt professed by an employer as to the union's majority claim must be genuine. Otherwise the employer has a duty to bargain and may not insist upon an election. Joy Silk Mills v. N. L. R. B., 1950, 87 U.S.App.D.C. 360, 185 F.2d 732.

1. The filing and subsequent withdrawal of the representation petition in no way prejudiced the union's demands for recognition. N. L. R. B. v. Kobritz, 1 Cir., 1951, 193 F.2d 8.

2. It is also the Board's settled policy not to conduct representation elections during the pendency of unfair labor practice charges. Columbia Pictures Corp., 81 N. L.R.B. 1313 (1949); Southern Steamship Co. v. N. L. R. B., 1942, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246.

In the instant case we find no evidence to suggest that respondent ever had a bona fide doubt as to the union's majority status. Respondent pursued a course of conduct that evidences a clear violation of the Act's good faith requirements. It consistently refused to bargain with the union, which at all relevant times represented a majority of respondent's employees. Not once during the January 30 or February 6 meetings did respondent challenge the union's right to represent the employees. On both of these occasions the union informed respondent that a majority of its employees had signed union cards. There was no necessity for the union to offer proof of the genuineness of its majority claim absent a challenge by respondent. The refusal to bargain was not based upon any doubt that the union spoke for a majority of the employees. Respondent would have refused to bargain had every employee in the plant signed authorization cards.

Only after respondent sought to dissipate the union's majority by discriminatory refusals to reemploy four union members did respondent inform the union that it doubted its majority status. Respondent is hardly in a position to complain about the union's refusal to consent to an election when respondent's own unfair labor practice rendered a free election impossible. See N. L. R. B. v. Harris-Woodson Co., 4 Cir., 1947, 162 F.2d 97. The Board correctly concluded that respondent's demand for an election was not made in good faith but solely for the purpose of delay and to avoid its obligations under the Act.

Respondent urges us to deny the Board's petition for enforcement because of an alleged change in Board policy announced by changed personnel of the National Labor Relations Board. The contention is that, because of this alleged change of policy, respondent is being unfairly treated in that the present membership of the Board would reach a different result.

The simple answer is that in so far as this case is concerned no change of policy appears, because if that were so we are convinced the Board as now constituted would not have sent its legal representative to appear before us and urge the enforcement of its order.

Decree will be entered enforcing the Board's order as prayed.