NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Loren A. DECKER, d/b/a Decker Truck
Lines, Respondent.

No. 16738.

United States Court of Appeals
Eighth Circuit.

Nov. 14, 1961.

Russell Specter, Atty., N. L. R. B.,
Washington, D. C., made argument for
petitioner. Stuart Rothman, Gen. Coun-
sel, N. L. R. B., Washington, D. C., Dom-
inick L. Manoli, Associate Gen. Counsel,
Marcel-Mallet-Prevost, Asst. Gen. Coun-
sel, Melvin Pollack, Atty., N. L. R. B.,
Washington, D. C., were with him on the
brief.

John H. Mitchell, Fort Dodge, Iowa,
made argument for respondent and was
on the brief.

Before SANBORN, MATTHES and
RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This case is before the Court on petition of the National Labor Relations Board for enforcement of its order of August 26, 1960, issued against Loren A. Decker, d/b/a Decker Truck Lines (hereinafter called Decker) whose terminal is at Fort Dodge, Iowa, within the jurisdiction of this Court. The Board's Decision and Order are reported in 91 N.L.R.B., at 128.

The order in question was made pursuant to Section 10(c) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(c). It is based on findings made by the Board:

(1) that Decker violated Section 8(a) (5) and (1) of the Act, 29 U.S.C.A. § 158 (a) (5), (1), by refusing to negotiate in good faith, on and after January 21, 1959, with Local Union No. 650, Teamsters, Chauffeurs, Warehousemen & Helpers of America, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and by unilaterally increasing wages of his employees in July, 1959, after he had negotiated with that Local Union concerning wages; (2) that Decker violated Section 8(a) (3) and (1) of the act by discriminatorily denying trucker Earl Hall work from January 18 to April 11, 1959 and by discriminatorily discharging trucker Carl Reisner on March 18, 1959; (3) that Decker independently violated Section 8(a) (1) of the Act by questioning employees concerning Union activities, threatening them with economic reprisals for such activity, and by soliciting them to withdraw from the Union and to repudiate it, by promising a wage increase and by circulating an anti-Union petition. The Board's order requires Decker to cease and desist from such unfair labor practices; to take affirmative action to reinstate trucker Reisner and to make trucker Hall whole; upon request to bargain collectively with the Local Union; to preserve and make available to the Board for examination, upon request, his pertinent records; to post at his terminal appropriate notices to be furnished him by the Regional Director; and to notify the Regional Director what steps he has taken to comply with such directives and order.

All that Decker urges in opposition to enforcement of such order is: (1) that he has never been permitted to have an election to determine the question of Union representation, although petitions therefor were filed with the Board by him and also by three of his employees on March 28, 1959; (2) that those petitions were dismissed by the Board without a hearing after the Union filed charges accusing Decker of "unfair labor practices"; (3) that a later petition for an election filed by Decker was also dismissed because the Regional Office of the N.L.R.B. ruled the question of representation was involved in the Union's charges as made against him and then pending before the N.L.R.B.; (4) that reinstatement of trucker Reisner has been offered and refused and he has made full settlement with Hall. Hence, Decker says, no part of the order should be enforced, and particularly that part of the Board's order concerning Hall and Reisner, until evidence is taken concerning his right to an election and the present situation of Hall and Reisner.

None of the points urged by Decker against enforcement of the Board's order are leveled against the sufficiency of the evidence to sustain the findings of the Board as made, from which it determined Decker's unfair labor practices to be in violation of the Act, as above stated. The sum and substance of Decker's main thrust is stated by him thus: "The issue before the Court is basically one of representation and Decker's right to an election in (sic) the question of representation and the examiner's report and the Board's order deprive (him) of this basic right." In his brief and by oral argument Decker "states that Union membership is not an issue in this case because Respondent's employees were already Union members when the Union first approached the Respondent in January, 1959 * . * *. Respondent's employees were required to belong to the Union in

order to load and unload trucks at different points."

■ In the light of the position assumed by Decker toward the order of the Board, enforcement of which is here sought, it is readily perceived that only one basic question is presented for determination and that may be stated thus: whether under the facts adduced before the N.L.R.B. Decker had a right to petition for an "election" for determination of the exclusive representative for purposes of collective bargaining on behalf of his employees after he was first approached by the Local Union, informed that a majority of his drivers had signed Union cards, and was requested to negotiate with the Local Union. That he had no such right under the Act and rules of the Board will hereinafter be demonstrated. As a consequence, this opinion may be capsulated by categorically stating that a reading of the record as a whole reveals substantial evidence in support of each of the findings made by the Board in this case and it is most convincing therefrom that the Board correctly determined that Decker refused to bargain in good faith with Local Union 650, in violation of Section 8(a) (5) and (1) of the Act.

These salient facts appear from the record. On January 10, 1959, six of the eight over-the-road drivers regularly employed by Decker met with a representative of Local Union 650 and signed cards authorizing that Union to act as their collective bargaining agent with Decker. January 21, 1959, Melvin Jensen, Business Representative of Local 650, called on Decker, informed him that he had with him Union cards from six of Decker's drivers and requested him to recognize that Union as the bargaining representative of his drivers and for an opportunity to negotiate a contract. Jensen offered to show Decker the Union cards. Decker did not ask to see the cards, instead Decker put Jensen off with a flimsy reason. February 4, 1959, Jensen returned to Decker's terminal to renew his request for negotiations. This time he was ordered off the premises by Decker.

February 11, 1959, Jensen advised Decker that the drivers would strike unless the Union was recognized and a contract agreed upon by February 21, 1959. At that time, all eight regular drivers of Decker had signed Union cards. February 16, 1959, Decker consulted his attorney, who merely informed Jensen that his client "is going to require that your Union be certified" by the N.L.R.B. "When the certification is made the Company is ready:—(and) will promptly arrange for bargaining sessions." Subsequent thereto, but before March 27, 1959, Decker, his Attorney and Jensen had several conferences at which contract provisions were negotiated. It is admitted that an agreement on a wage scale was reached before March 27, 1959. On the last-mentioned date a letter was sent by Decker's Attorney to Jensen, in which it was stated in part: "the addendum has not been signed by Loren Decker and (sic) he believes there should be an election to determine the bargaining agent for his employees." That letter also contained this significant paragraph:

"This is brought about because of real serious trouble he is having with his employees, and it is my understanding that they too will ask for an election."

There is substantial evidence in the record that the "trouble" referred to in that letter was the result of threats of discharge, coercion, intimidation, promise of wage increase, encouraging employees to negotiate directly with Decker, and circulation of anti-Union petition sponsored by Decker. The following was also established: after Decker learned of Union activities on the part of his employees, he interrogated the drivers concerning that matter and threatened them with reprisals and Decker singled out Hall, Reisner and another employee as the ones whom he believed to be responsible for Union activities coming into his business. Although eight of his employees had signed Union cards before February 7, 1959, by mid-March the Union's majority had been dissipated because of Decker's above-mentioned conduct. In a move to

get a contract executed to which the Union would not be a party, Decker held a meeting in his office, with all employees present. Here Decker said he would give them a raise but he could not afford to sign a Union contract. Thereafter, Hall, who refused to go along, was discriminatively denied runs, and Carl Reisner was terminated, as the Board found, "because of Decker's desire to get rid of one of the last Union adherents on his payroll." Notwithstanding the foregoing and other matters shown in the record, it was not until April 10, 1959, that Decker filed a petition for an election with the N.L.R.B. No action was taken on that petition by the Board because of the Union's unfair labor charges filed against Decker on April 19, 1959.[1] Effective July 12, 1959, Decker, without prior consultation or notice to the Union, put into effect wage rates identical with those set out in the Union's addendum prepared for Decker's signature after negotiations between Jensen, Decker and his lawyer.

It is too late, in light of the declared wisdom found in the National Labor Relations Act, for an employer to drift into an eddy, as Decker does, and now make the contention that he has no duty to bargain with a particular Union until it has been certified by the Board, after an election. Under the N.L.R.B., "An employer is under a duty to bargain as soon as the union representative presents convincing evidence of majority support." N. L. R. B. v. Dahlstrom Metallic Door Co., 2 Cir., 1940, 112 F.2d 756, 757. "The Act is clear in intent, and it has been too well established to require extended discussion, that election and certification proceedings are not the only method of determining majority representation * * *." Matter of L. B. Hartz Stores, 1946, 71 N.L.R.B. 848, 871. See also I. O. B. et al. v. Los Angeles Brewing Co., Inc., et al., 9 Cir., 1950, 183 F.2d 398, 405, and cases there cited. Decker's contention, that he had no duty

1. The Board has a policy not to conduct representative elections during the pendency of unfair labor practice charges. N.

to bargain until Local 650 had established its majority status by a Board election, is frivolous. Medo Photo Corp. v. N. L. R. B., 1944, 321 U.S. 678, 64 S.Ct. 830, 321 U.S. 678; N. L. R. B. v National Seal Corp., 2 Cir., 1942, 127 F.2d 776. "He made no inquiry of the Union's agents or, so far as it appears, of any one else as to who constituted the majority for the Union" when he was first asked to negotiate, "but merely engaged in acts violative of the Act," similar to those considered by this Court in N. L. R. B. v. Wheeling Pipe Line, Inc., 8 Cir., 1956, 229 F.2d 391, at page 393. Under Section 9(c) (1) of the National Labor Relations Act, 29 U.S.C.A. § 159(c) (1), it has been held:

> "There is no absolute right vested in an employer to demand an election. I. O. B. v. Los Angeles Brewing Co. (supra). If an employer in good faith doubts the union's majority, he may, without violating the Act, refuse to recognize the union until its claim is established by a Board election. A doubt professed by an employer as to the union's majority claim must be genuine. Otherwise the employer has a duty to bargain and may not insist upon an election." See N. L. R. B. v. Trimfit of California, 9 Cir., 1954, 211 F.2d 206, 209. Accord Joy Silk Mills v. N. L. R. B., 1950, 87 U.S.App.Div. D.C. 360, 185 F.2d 732.

In the case at bar there is no evidence, or even a suggestion on the part of Decker that he ever had a bona fide doubt as to the Local Union 650's majority status in January, 1959. On the contrary, it is clearly established that as soon as Decker learned that a majority of his employees had signed cards with that Union he immediately began to pursue a course of conduct in an attempt to dissipate that majority. As said in N. L. R. B. v. Trimfit of California, supra, 211 F.2d l. c. 210:

L. R. B. v. Trimfit of California, 9 Cir., 1954, 211 F.2d 206, 209, note 2.

"(He) consistently refused to bargain with the union, which at all relevant times represented a majority of (his) employees. Not once (from January 21, 1959 to February 7, 1959) did (Decker) challenge the union's right to represent (his) employees. On both of these occasions the union informed (Decker) that a majority of (his) employees had signed union cards. There was no necessity for the union to offer proof of the genuineness of its majority claim absent a challenge by (Decker). (His) refusal to bargain was not based upon any doubt that the union spoke for a majority of the employees. (Decker) would have refused to bargain had every employee in the plant signed authorization cards" (which is an established fact in the record of the case at bar). (Par. added)

The "findings of the Board (are) conclusive with respect to questions of fact—* * * when supported by substantial evidence on the record as a whole * * *." N. L. R. B. v. Denver Building & Construction Trades Council, et al., 1951, 341 U.S. 675, 691, 71 S.Ct. 943, 953, 77 L.Ed. 1284. In keeping with the Act, we find that on the record as a whole there is substantial evidence to support the totality of the Board findings as made in this case.

 The only other matter that should be noticed in this case is the point made by Decker in argument but which he does not undertake to support by fortifying authority, namely, "it is necessary that additional evidence be taken to protect Respondent's rights in this case. So the Respondent files this Application:

"The Respondent respectfully requests that enforcement of the Board's order be denied and that it particularly be denied until such time as the Respondent is given an opportunity to protect his statutory and constitutional rights by the introduction of evidence on the question of representation and on the question of full compliance with the Board's order as far as the employees Hall and Reisner are concerned."

The record made before the Trial Examiner and considered by the Board in this case patently reveals that Decker, with counsel, was given every opportunity to participate, and did so fully, in all hearings leading up to the cease and desist order as entered by the Board. The "question of representation" was thoroughly sounded at the hearings, and this specific finding was made by the Examiner in his report: "It is apparent from Decker's own testimony, * * * that he never accepted the principle of negotiating with the Union as the exclusive bargaining agent for his employees." The evidence which Decker says he now wants to introduce in the record is directed to the proposition that the Union had lost a majority of his employees at the time he filed a petition for an election, and to develop his compliance with the Board's order as to Reisner and Hall. It is well established that where the Union's loss of majority is attributable to the employer's unfair labor practices, as found by the Board in this case, the Union does not lose its representative status. Medo Corp. v. N. L. R. B. supra; Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020. Compliance may not be raised as a bar to the enforcement of a Board order. N. L. R. B. v. Mexia Textile Mills, Inc., 1950, 339 U.S. 563, 569, 70 S.Ct. 833, 94 L.Ed. 1067; N. L. R. B. v. Swift & Co., 8 Cir., 1942, 129 F.2d 222, 224.

Enforcement of the order is awarded as prayed.