**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ELLIOTT–WILLIAMS CO., Inc., Respondent.**

**No. 14687.**

United States Court of Appeals
Seventh Circuit.

April 7, 1965.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul M. Thompson, Atty., National Labor Relations Board, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Coun-

sel, Warren M. Davison, Atty., National Labor Relations Board, for petitioner.

Jack H. Rogers, Indianapolis, Ind., for respondent.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a petition under Sec. 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), to enforce an order of the National Labor Relations Board issued against respondent, an Indiana manufacturer, found guilty of violating Sec. 8(a) (1) of the Act by interfering with its employees' Sec. 7 organizational rights; and of violating Secs. 8(a) (5) and (1) by refusing to recognize and bargain with the Sheet Metal Workers Union as the representative of its employees. Respondent seeks to have ·the order set aside. We decide the order should be enforced.

The union commenced an organizational drive among respondent's employees in July, 1962, in which it obtained signed authorization cards from twenty of respondent's twenty-four eligible employees. After a discussion of recognition of the union with respondent's president, James Elliott, on August 13, 1962, at which Elliott refused to recognize the union and suggested an election, the union representatives that same day filed a representation petition with the Board. The Board issued its Order of Election on September 13, 1962. On November 21 the Board's Regional Director dismissed the election petition in view of the filing of the complaint, basis of this proceeding, against respondent by the General Counsel.

The trial examiner, whose findings and recommendations the Board adopted,[1] found that Elliott, respondent's president, Mrs. Elliott, its vice-president, and Robert Henry, who was found to be a supervisor within the meaning of the Act, 29 U.S.C. § 152(11), engaged in coercive practices violative of Sec. 8(a) (1) of the Act. We think there is substantial evidence on the record as a whole, bearing in mind the trial examiner's responsibility to determine the credibility of witnesses, to support those findings.

■ The Board found that Mrs. Elliott on two occasions threatened and interrogated employees; that Elliott gave a unilateral wage increase of ten cents an hour, offered to bargain directly with employees, and offered to lend the employees money to hire a lawyer to drop the Sheet Metal Workers and form an independent union; and that Henry threatened loss of jobs and benefits, polled employees as to their preference between the Sheet Metal Workers and an independent union, and offered to bargain directly with employees. These activities began immediately after the union's demand for recognition and continued until the filing of the complaint. Taken singly or in concert, they constituted unlawful interference with the organizational rights of respondent's employees under Sec. 7 of the Act. E. g., N. L. R. B. v. Mid-West Towel & Linen Service, Inc., 339 F.2d 958 (7th Cir. 1964).

■ Respondent contends that the Board improperly attributed to it the statements and conduct of Henry because, it says, the finding that Henry was a supervisor is not supported by substantial evidence on the record as a whole. The term "supervisor" under Sec. 2(11) of the Act, 29 U.S.C. § 152 (11),

"* * * means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

1. The Board's Decision and Order are reported at 143 N.L.R.B. 811.

This section is to be read in the disjunctive and the existence of any one of the indicia listed is sufficient to support a finding that the one possessing it is a supervisor. Keener Rubber, Inc. v. N. L. R. B., 326 F.2d 968 (6th Cir.), cert. denied 377 U.S. 934, 84 S.Ct. 1337, 12 L. Ed.2d 297 (1964) ; N. L. R. B. v. Fullerton Publishing Co., 283 F.2d 545 (9th Cir. 1960) ; Ohio Power Co. v. N. L. R. B., 176 F.2d 385, 387, 11 A.L.R.2d 243 (6th Cir.), cert. denied 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949).

 There is substantial evidence on the record as a whole from which the examiner could find that Henry was a supervisor within the rule announced in Ohio Power. Testimony credited by the examiner justified his findings that Henry had a separate work area in the metal shop with a desk similar to those of company officials; that he instructed, criticized, and assigned work to employees; that he was able effectively to recommend the hiring and firing of employees; and that he gave employees permission to leave work early. He was paid over $1.00 an hour more than most of the employees received and he was described by employees who testified as "metal shop foreman" and "in charge of the metal shop." The evidence shows that Henry was not merely more skilled than the others as was Curole in N. L. R. B. v. Valentine Sugars, Inc., 211 F.2d 317, 322–323 (5th Cir. 1954), nor was the authority he exercised "of a routine nature" as was that of Petti in Precision Fabricators v. N. L. R. B., 204 F.2d 567, 568–569 (2d Cir. 1953). The question of who is a supervisor is a practical matter and one of fact in which the Board, in the exercise of its primary function as fact finder, must be permitted "a large measure of informed discretion." N. L. R. B. v. Swift and Co., 292 F.2d 561, 563 (1st Cir. 1961) ; Keener Rubber, Inc. v. N. L. R. B., 326 F.2d 968 (6th Cir. 1964).

We think that discretion was properly exercised here.

██ Respondent's contention that the Board is estopped to find that Henry was a supervisor because of the union's stipulation in the representation hearing, approved by the Board's Regional Director, that Henry should be included in the unit is clearly without merit. N. L. R. B. v. Montgomery Ward & Co., 242 F.2d 497 (2d Cir.), cert. denied 355 U.S. 829, 78 S.Ct. 40, 2 L.Ed.2d 41 (1957).

██ We think also that the record as a whole justified the examiner in concluding that "at all times since August 13, 1962" the union was the representative of a majority of respondent's employees in an appropriate unit and that "by refusing on or about August 13, 1962, and at all times thereafter" to recognize and bargain with the union as the exclusive representative of its employees respondent violated Sec. 8(a) (5). Respondent contends that there is no substantial evidence to support a finding that the union made a clear demand for recognition and bargaining. Instead, respondent argues, the union representatives gave Elliott the choice of immediate recognition or an election and Elliott chose the latter.

The testimony as to what was said at the meeting between Elliott and the union representatives on August 13 is in dispute, but it is clear that Elliott was told that a majority of his employees had signed authorization cards, that Coyle, the union representative, had them in his hand and that Elliott did not ask to see them and expressed no doubt as to the authenticity of the cards or objection to the appropriateness of the unit.[2] The testimony of Coyle, which the examiner obviously credited, was that after he told Elliott that ninety per cent of his employees had signed cards, Elliott refused to recognize the union. We think Coyle's testimony,[3] taken as true, shows a clear

---

2. Nor does respondent challenge here the authenticity of the cards or the appropriateness of the unit.

3. "I said there doesn't have to be an election at this time with this much representation, that he should recognize us and start bargaining with the union for con-

demand for recognition and bargaining and a clear refusal and there is no evidence of any good faith doubt on Elliott's part of the union's majority status.

 Respondent contends further, however, that even if there was a clear demand and refusal there was no 8(a) (5) violation since it was not shown that the reason for the refusal to bargain was to gain time in order to dissipate the union's majority, citing N. L. R. B. v. Bedford-Nugent Corp., 317 F.2d 861 (7th Cir. 1963). That case does not hold that lack of good faith doubt can be shown only by proof that the refusal was to gain time. The law is clear that

> "The employer acts at his peril in refusing to recognize a duly selected bargaining agency of an appropriate unit of his employees unless the facts show that in the exercise of reasonable judgment he lacked knowledge of the appropriateness of the unit or the selection of the majority representative."

N. L. R. B. v. Piqua Munising Wood Prod. Co., 109 F.2d 552, 556 (6th Cir. 1940); accord N. L. R. B. v. Nelson Mfg. Co., 326 F.2d 397 (6th Cir. 1964); N. L. R. B. v. Decker, 296 F.2d 338 (8th Cir. 1961).[4] The duty to bargain is not dependent on a Board election and certification. An employer may refuse an unequivocal demand for recognition and bargaining only on the basis of a good faith doubt of the genuineness of the union's claims, and the union does not withdraw or waive its demand by seeking an election when the employer makes it clear that it will not recognize the union. N. L. R. B. v. Trimfit of California, 211 F.2d 206 (9th Cir. 1954); Iob v. Los Angeles Brewing Co., 183 F.2d 398 (9th Cir. 1950). Where, as in this case, the union had proof of its majority status readily available and respondent chose not to learn the facts, it "took the chance of what they might be." N. L. R. B. v. Remington Rand, Inc., 94 F.2d 862, 869 (2d Cir.), cert. denied 304 U.S. 576, 585, 58 S.Ct. 1046, 82 L.Ed. 1540 (1938); N. L. R. B. v. Dahlstrom Metallic Door Co., 112 F.2d 756 (2d Cir. 1940).

 We see no prejudicial error in the denial by the examiner of respondent's motion to make the charges in paragraph 5 of the complaint more specific. The complaint named those alleged to have made threats and promises and engaged in unlawful interrogation and the dates, or approximate dates, on which such activities were alleged to have taken place. "All that is requisite in a valid complaint before the Board is that there be a plain statement of the things claimed to constitute an unfair labor practice that respondent may be put upon his defense." N. L. R. B. v. Piqua Munising Wood Prod. Co., 109 F.2d 552, 557 (6th Cir. 1940); Lloyd A. Fay Roofing Co. v. N. L. R. B., 222 F.2d 938, 940 (1st Cir. 1955); American Newspaper Pub. Ass'n v. N. L. R. B., 193 F.2d 782, 800 (7th Cir. 1951), modified on other grounds 345 U.S. 100, 73 S.Ct. 552, 97 L.Ed. 852 (1953); N. L. R. B. v. Pac. Gas & Elec. Co., 118 F.2d 780 (9th Cir. 1941).

 We agree with respondent that the Board's order is too broad in that paragraph (c), ordering respondent to cease and desist from "in any other manner" interfering with its employees' organizational and bargaining rights, comes within the rule announced in N. L. R. B. v. Thompson Ramo Woolridge, Inc., 305 F.2d 807, 810–811 (7th Cir. 1962), limiting the order to the unlawful conduct in issue. We think the "threat" of future commission of "related" unfair labor practices by respondent is not sufficiently shown on this record to justify the breadth of the proscription in paragraph (c). N. L. R. B. v. Prince Maca-

---

tract negotiations. He said he would not do that. That he wanted to go through the National Labor Relations Board. And I said that is what we will do."

4. There is no merit, therefore, in respondent's contention that the fact that Elliott was willing to waive the time for appeal from the Board's Order of Election and have an immediate election conclusively shows that there was no 8(a) (5) violation.

roni Mfg. Co., 329 F.2d 803 (1st Cir. 1964); Burr v. N. L. R. B., 321 F.2d 612 (5th Cir. 1963); N. L. R. B. v. Lindsay Newspapers, Inc., 315 F.2d 709 (5th Cir. 1963).

The order will be modified by striking therefrom paragraph (c) and as modified the order is enforced.

Kaufman, Circuit Judge, dissented.