**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CUMBERLAND SHOE CORPORATION, Respondent.**

No. 16068.

United States Court of Appeals Sixth Circuit.

Oct. 26, 1965.

---

Melvin H. Reifin, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Elliott Moore, Attorney, N. L. R. B., Washington, D. C., on brief, for petitioner.

William M. Pate, Atlanta, Ga., George B. Smith, Atlanta, Ga., on brief; Mitchell, Clarke, Pate & Anderson, Atlanta, Ga., Constangy & Prowell, Atlanta, Ga., of counsel, for respondent.

Before MILLER, O'SULLIVAN and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is a National Labor Relations Board petition for enforcement of an order to respondent to cease and desist from certain unfair labor practices and from refusing to bargain collectively with the union [1] as the representative of its employees.

As to the cease and desist order, respondent's brief states:

"Respondent does not agree with the Board's findings of violations of Section 8(a) (1). With the exception of those findings covered by the first two questions, however, respondent concedes that they are supported by substantial evidence. For this reason, the respondent has framed these questions to reflect the particular findings which it is questioning."

Since respondent does not oppose enforcement of the cease and desist order concerning 8(a) (1) violations, we shall not detail our views thereon, except to note that the record taken as a whole does contain substantial evidence to support the Board's findings of such violations.

The basic issue presented by this case concerns whether or not respondent violated Section 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain with the union after it had demonstrated majority status.

In January of 1963 the union began an organizing campaign in respondent's plant at Chapel Hill, Tennessee. By January 17, 1963, 81 out of 143 employees had signed an authorization card reading as follows:

"I, an employee of the Cumberland Shoe Co. hereby authorize the Boot & Shoe Workers Union, A.F.L.–C.I.O., through its duly accredited representatives, to act for me as a collective bargaining agency in all matters which pertain to rates of pay, wages, hours and all other conditions of employment, including the signing of an agreement with my employer in conformity with the National Labor Relations Law and/or State Labor Relations Law.

"Name

"Address

"Operation                 Date
(Reverse side)

"Boot & Shoe Workers' Union
Affiliated with A.F.L.–C.I.O.
Southern Office
912 E. Cheatham Street
Union City, Tennessee"

By letter dated January 18, 1963, the union notified the respondent that a majority of its production and maintenance workers had designated it as their collective bargaining representative, offered to agree to a card check by an impartial person, and requested recognition and negotiations.

---

1. Boot & Shoe Workers Union, AFL-CIO.

The company responded by letter indicating that it did not believe the union had a majority of its employees who had joined "freely and without coercion," and refusing to recognize or bargain with the union. Respondent's position is that "Seventeen of these cards were solicited by fellow employees through statements that the purpose of the cards was to secure a Board election."

This issue was the subject of extensive testimony before the Trial Examiner. He found that 17 of the 81 employees claimed to constitute the union majority "were told when they were solicited by fellow employees that the purpose of the cards was to secure an election." Relying upon a somewhat similar factual situation where oral representations had been held to invalidate the written authorizations (Englewood Lumber Company, 130 N.L.R.B. 394 (1961)), the Trial Examiner found that the 17 cards were invalid and that as a consequence the union did not represent a majority when it demanded recognition and bargaining.

On review of the Rulings of the Trial Examiner (to which both respondent and the general counsel had filed exceptions), the Board found:

"We believe that the instant case is factually distinguishable from Englewood Lumber, supra, and that hence that case is inapplicable. While it is true, as found by the Trial Examiner, that 17 of the signatories testified that they were told that the purpose of the cards was to secure a Board election,[3] it does not appear that they were told that this was the only purpose of the cards, and we cannot say, on the basis of this record that the card solicitors so indicated to employees.[4]

"3. The record indicates that the testimony to this effect consisted of affirmative responses by the signatories to leading questions propounded by Respondent's counsel, upon cross-examination, as to whether they were told that the purpose of the cards was to secure an election. We do not deem such testimony sufficient to controvert the statement of the purpose and effect of such cards contained on the face thereof, nor do we consider it inconsistent with an understanding that the cards served the dual purpose of designating a representative and of securing an election."

"4. In the Englewood Lumber case the solicitor explained to almost all the employees that the cards were only for the purpose of securing a Board election and thereby secured many signatures, including those of two employees whose hostility to the designated union was open and notorious and explicitly communicated to the solicitor. Cf. also, Morris & Associates, Inc., 138 NLRB 1160, 1164."

The Board also found:

"In view of the Respondent's threats, promises of benefit, and coercive interrogation of employees, as found by the Trial Examiner, we are persuaded that Respondent's refusal to bargain with the Union on January 23, 1963, was not the result of a good-faith doubt of the Union's majority, but in order to gain time to destroy that majority.[6] We find, accordingly, that the Union has demonstrated its majority status and that Respondent, by refusing to recognize or bargain with it, violated Section 8(a) (5) and (1) of the Act.[7] "

"6. Joy Silk Mills v. N. L. R. B. [87 U.S. App.D.C. 360], 185 F.2d 732, cert. denied, 341 U.S. 914 [71 S.Ct. 734, 95 L. Ed. 1350]."

"7. Member Brown joins in this finding because, in his opinion, the best evidence of employees' intent, i. e., their signature to cards designating the Union as their bargaining agent, establishes the majority status of the Union at the time it requested recognition. He believes it unnecessary and inappropriate to consider any representations the Union's solicitors may have made or what the employees may have been told."

Respondent in this case relies principally upon two cases: Englewood Lumber Company, 130 N.L.R.B. 394 (1961) and N. L. R. B. v. Koehler, 328 F.2d 770 (C.A.7, 1964). We are convinced that the factual situation in each of these

cases was materially different from that posed by our instant case.

In the Englewood case the Trial Examiner and the Board placed much emphasis upon the fact that one of the solicitors of the union authorization cards testified that he secured cards from persons expressing hostility to the union. He said that they signed only after he assured them that the purpose was to secure an election where they could vote either way.

In the Koehler case the court relied upon this testimony:

"Thus Simons testified he told the employees that by signing the cards they were not selecting the Teamsters as their bargaining agent, that they would have a chance to vote at a secret election, and that they could vote for the Teamsters Union or against it." N. L. R. B. v. Koehler, supra at 773.

In our present case we find no claim of outright misrepresentation on the part of any solicitor. The authorization cards were themselves wholly unambiguous and they related solely to authorization of union representation as collective bargaining representative.

The record does disclose, of course, that 17 employees testified generally to the effect that they had been told that the purpose was to have an election. But, of course, the signing of authorization cards was an essential preliminary to a union petition for an election. In no instance did any employee testify that he was told that the election was the only purpose of the card. And the union did indeed seek an election, withdrawing that request only after it had become convinced that the company's Section 8(a) (1) violations had coerced a sufficient number of employees so as to eliminate the union's majority support.

This sort of issue pertaining to the validity of a union's claim of majority status has been before the courts a number of times. In a recent case, N. L. R. B. v. Winn-Dixie Stores, Inc., 341 F.2d 750 (C.A.6, 1965), this court quoted with approval the following relevant paragraph from Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732 (1950), cert. denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350 (1951):

"[A]n employee's thoughts (or afterthoughts) as to why he signed a union card, and what he thought that card meant, cannot negative the overt action of having signed a card designating a union as bargaining agent. N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 790; N. L. R. B. v. Consolidated Machine Tool Corp., 67 N.L.R.B. 737, 739, enforced [2 Cir.,] 163 F.2d 376, certiorari denied 332 U.S. 824, 68 S.Ct. 164, 92 L.Ed. 399." N. L. R. B. v. Winn-Dixie Stores, Inc., supra 341 F.2d at 755

In both Joy Silk Mills and Winn-Dixie the courts concerned upheld the Board's findings of majority status of the union concerned, and a refusal to bargain collectively in violation of Section 8(a) (5) of the Act.

A similar result as to this particular issue was reached by the First Circuit in N. L. R. B. v. Gorbea, Perez & Morell, S. En C., 300 F.2d 886 (C.A.1, 1962), on the following reasoning:

"Even though many of the employees testified that they had not understood the meaning of the cards, the cards were very clearly phrased. The employees were not illiterate. There was no claim of affirmative misrepresentation by the union. The Board was justified in accepting the cards at their face value and rejecting the oral testimony that the employees had thought they meant something else." N. L. R. B. v. Gorbea, Perez & Morell, S. En C., supra at 887.

See also, N. L. R. B. v. Greenfield Components Corporation, 317 F.2d 85 (C.A. 1, 1963).

The underlying problem in this whole area is, of course, that of determining from the record of testimony before an NLRB Trial Examiner whether or not

the employer's refusal to bargain was based upon a "good-faith doubt," or on the contrary, was a mere device on the part of the employer to take such steps as he could to deprive the union of employee support needed to constitute that majority. In cases such as this, where the employer's unfair labor practices are clearly established, both before and after the demand for bargaining, the good faith of his doubts of the union majority may properly be regarded with some suspicion. In an early somewhat classic case, N. L. R. B. v. Sunshine Mining Co., 110 F.2d 780 (C.A.9, 1940), cert. denied, 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed. 1118 (1941), we find this interesting discussion of the problem:

"It is insisted in any event that a majority of the employees had not selected the Union as its bargaining agent. At the hearing the Union's membership books were checked against respondent's payroll; membership application cards were examined, and witnesses testified in reference thereto. Respondent produced as witnesses some employees who said that they had signed the cards and paid initiation fees for the sole purpose of voting against the strike. Some other employees testified that by signing the cards they had not intended to designate the Union as the representative for collective bargaining. As pointed out in the findings of the Board, the testimony of these witnesses given after the failure of the strike in which they had participated was not sufficient to overcome the effect to be given to their having previously joined the Union or signed the membership cards designating the Union as the bargaining unit. Besides their conduct and demeanor while testifying, there was other evidence tending to discredit these witnesses; they had been restored to their former positions with the company while others similarly situated were denied reemployment. As demonstrated by the Board, this dis-crimination was brought about through the intervention of certain individuals acting for or with respondent and who, at the time the testimony was given, were present confronting these witnesses. In view of all these circumstances we cannot say that the finding of the Board was not justified." N. L. R. B. v. Sunshine Mining Co., supra 110 F.2d at 790.

Particularly appropriate to our present case is the language used by the Second Circuit in N. L. R. B. v. Consolidated Machine Tool Corp., 163 F.2d 376 (C.A. 2, 1947), cert. denied, 332 U.S. 824, 68 S.Ct. 164, 92 L.Ed. 399 (1947):

"Whether the refusal was motivated by a genuine doubt as to the League's designation by a majority of the pattern makers was for the Board to decide, and the coercive conduct previously discussed supports the Board's inference that the respondent's doubt was spurious. Also the choice of the remedy appropriate to expunge the effects of unfair labor practices is for the Board, not the courts. Consequently its affirmative order to bargain with the League was correct. Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020." N. L. R. B. v. Consolidated Machine Tool Corporation, supra, 163 F.2d at 378-379.

In our instant case we find that the findings of fact of the National Labor Relations Board were supported by substantial evidence; that respondents did not have appropriate grounds for a good-faith doubt as to the union's majority status; that respondent violated Section 8(a) (5) and (1) of the Act in refusing to bargain with the union. N. L. R. B. v. Winn-Dixie Stores, Inc., supra; N. L. R. B. v. Gorbea, Perez & Morell, S. En C., supra; Joy Silk Mills v. N. L. R. B., supra; N .L. R. B. v. Consolidated Machine Tool Corp., supra.

Enforcement of the order of the Board is hereby granted.