Bernard S. **HAPPACH**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

No. 15079.

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1965.

Rehearing Denied Dec. 22, 1965.

Castle, Circuit Judge, dissented in part.

Donald A. Morgan, Peoria, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin H. Reifin, Atty., N. L. R. B., Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Bernard S. Happach, an individual proprietor of a self-service supermarket in Pekin, Illinois, petitions this court to review and set aside an order of the National Labor Relations Board.

On December 24, 1963, the Board issued a complaint alleging that Happach, through his store manager, Thomas S. Hancock, violated Section 8(a) (1) of the National Labor Relations Act by threatening his employees for their union activity with discharge or cuts in working hours; that Happach violated Section 8 (a) (3) by the discriminatory discharge of Richard Pollock, a stock boy; and that Happach violated Section 8(a) (5) by refusal to bargain with a majority union.

After a hearing in which Happach did not offer any evidence, the trial examiner recommended dismissal of the 8(a) (1) violation charge, but found that Happach had violated Sections 8(a) (3) and 8(a) (5). As for the order, the examiner recommended that Happach cease and desist from discouraging membership in the union and from refusing to bargain collectively with the union. He further recommended that Happach be directed to bargain with the union as the exclusive representative of his grocery clerk employees and that Happach offer Pollock, the discharged stock boy, full reinstatement with back pay.

Happach filed exceptions to the trial examiner's decision, but the Board adopted the findings, conclusions, and recommendations of the trial examiner.

In his petition to review, Happach contends that the Board's findings are not supported by substantial evidence on the record as a whole. Specifically, he claims that the union authorization cards which evidenced the majority status of the union among Happach's grocery clerk employees were signed by employees who were told that the cards would be used to obtain an election and would not be used directly to obtain recognition of the union from Happach without an election. With respect to the discriminatory discharge, Happach claims that Pollock's dismissal was a legitimate discharge for cause.

The trial examiner made the following findings of fact. In September, 1963, Marvin T. Dixon, employed by Happach as a stock boy, contacted Retail Clerks Union, Local 536 and obtained a supply of authorization cards. The relevant portion of the card reads as follows:

"Authorization for Representation

"Desiring to enjoy the rights and benefits of collective bargaining, I, the undersigned employee of the .......... hereby authorize Retail Clerks International Association, AFL–CIO, or its chartered Local Union to represent me for the purposes of collective bargaining, respecting rates of pay, wages, hours of employment, or other conditions of employment, in accordance with applicable law."

In addition to his own signature, Dixon obtained the signatures of nine other employees. The signed authorization cards were returned to the union, and, shortly thereafter, union representatives visited Happach's store and spoke with manager Thomas S. Hancock, telling him that the union represented a majority of the store's grocery clerks and offering to prove this claim by a card check. Hancock stated he had no authority in the matter and offered to advise Happach, who was not in the store, and have him contact the union.

Happach did not contact the union. Approximately a week later, a union representative was able to contact Happach personally. At this meeting, Happach was informed that the union represented a majority of his grocery clerks and that it wanted recognition as their bargaining representative. The union offered a card check to show its majority. Happach expressed no doubt as to the union majority, but stated that he wished to consult with his attorney before making his decision.

About a week later, the union representative returned. Happach then told him that after consultation with his lawyer, he had decided not to recognize the union.

In the following week, the union again attempted to secure recognition. Happach repeated his refusal and also refused to supply the union with the name of his attorney.

At no time in any of the meetings did Happach express any doubt as to the union's majority, ask for proof of the union's majority status, or give any reason other than advice of counsel, for his refusal to recognize the union.

A day or so after the last meeting, the union began picketing Happach's grocery. Richard E. Pollock was the only one of Happach's employees who participated in the picketing. A few days

after the initiation of the picketing, Pollock was discharged, allegedly for having mismarked merchandise.

The trial examiner found that the representations made by the union in soliciting employee signatures on the union authorization cards were not such that the signing employees did not manifest an intention to designate the union as their bargaining representative, as the authorization cards indicated. He found that when the union requested recognition and Happach denied it, the union did represent a majority of Happach's grocery clerks and was their exclusive bargaining agent. Further, Happach was found not to have had a good-faith doubt of the union's majority status.

Finally, the trial examiner found that Pollock's discharge was not prompted by errors he made in marking merchandise, but by his activity in support of the union.

■ It is true, as Happach argues, that if union authorization cards are convincingly shown to have been signed because of a misrepresentation that the purpose of the authorization cards is to obtain a NLRB election, then the cards will not be considered evidence of the union's majority status. N.L.R.B. v. Koehler, 7 Cir., 328 F.2d 770, 773 (1964). However, in the instant case, there is no satisfactory showing that Happach's employees signed cards solely because they were promised that such cards were to be used for the purpose of obtaining an election; but there was evidence from which the Board could reasonably find that the authorization cards were not represented to be for the sole purpose of an election. N.L.R.B. v. Cumberland Shoe Corp., 6 Cir., 351 F.2d 917 (October 26, 1965).

Since Happach never expressed any doubt of the majority status of the union, and since the Board found that the union in fact did represent a majority of Happach's grocery clerks, it is clear that Happach's refusal to recognize and bargain with the union was not motivated by a good faith doubt as to its majority status and that Happach violated Section 8(a) (5) of the Act. N.L.R.B. v. Elliott-Williams Co., 7 Cir., 345 F.2d 460, 464 (1965). Cf., N.L.R.B. v. Cumberland Shoe Corp., supra.

■ The questions concerning the union's majority status, the meaning of and the employees' understanding of the representations made with respect to the authorization cards, and the reasons for Pollock's discharge are all factual questions. The Board's factual determinations, if supported by substantial evidence on the record as a whole, are to be accepted by a reviewing court. 29 U.S. C.A. § 160(f).

■ A review of the record discloses that the Board's findings are supported by substantial evidence on the record as a whole.

The petition to set aside the Board's order under review will be denied and such order will be enforced.

Petition denied. Order enforced.

CASTLE, Circuit Judge (dissenting in part).

In my opinion the record clearly demonstrates that the circulator of the union authorization cards, employee Marvin Dixon, understood, and that he gave the employees who signed the cards to understand, that the execution of the cards was for the purpose of obtaining an election in which they could express their choice on the question of union affiliation. The Union's reliance upon such cards as evidencing its attainment of the status of collective bargaining representative for the employee unit involved is therefore not justified, and in such circumstances an order that the employer bargain with the union is improper. N.L.R.B. v. Koehler, 7 Cir., 328 F.2d 770. The fact that the employer was subjectively in "bad faith" in refusing to bargain with the Union—was unaware of the understanding of the circulator and the representation he had made to the other employees in obtaining their signatures—is not a basis for imposing a penalty on the employees in the form of representation by a Union

they have not chosen to represent them. On the record in the instant case an order to bargain is inconsistent with the basic purposes of the National Labor Relations Act. It defeats, rather than contributes to, industrial peace and stability in labor-management relations.

I would deny enforcement of the Board's order that the petitioner bargain with the Union.