NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

Fritchof A. FOSDAL and Adeline M. Fosdal, d/b/a Fosdal Electric, Respondent.

No. 15579.

United States Court of Appeals
Seventh Circuit.

Oct. 28, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomin I. Hirsh, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Asso. Gen. Counsel, Martin R. Ganzglass, Atty., N. L. R. B., Washington, D. C., for petitioner.

Walter S. Davis, John G. Vergeront, Russ R. Mueller, Hoebreckx, Davis & Vergeront, Milwaukee, Wis., for respondent.

Before KNOCH, KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Pursuant to Section 10(e) of the National Labor Relations Act (29 U.S.C. Sec. 160(e)), the National Labor Relations Board is seeking enforcement of an order against Fosdal Electric Company, an electrical contractor located in Waukesha, Wisconsin.

Excluding clerical employees, Fosdal employs ten persons. On May 25, 1964, seven of them attended a meeting in the Machinists' Labor Hall in Waukesha, two arriving late. George Mock, business representative of the Electrical Workers' Union, No. 494, was also present. During that evening, the seven employees signed dual purpose cards (a) authorizing the Union to represent them in collective bargaining and (b) requesting an NLRB election.

On May 26th, Mock telephoned Fritchof A. Fosdal, a partner in respondent Company, and told Fosdal that a majority of the men were interested in joining the Union. That afternoon, Mock and Fosdal met at Fosdal's home. Mock advised Fosdal that a majority of the electricians in the Company had authorized the Union to seek a collective bargaining agreement with the Company. Mock displayed a copy of the contract between the Union and the Milwaukee Chapter of the National Electric Contractors Association. The two then discussed that contract in detail. Afterwards Mock asked Fosdal to sign a contract, but Fosdal asked for more time. Later Fosdal said he thought there should be an election. Mock noted that both sides would save a lot of time by reaching an agreement instead of having an election, but Fosdal refused to come to an agreement. Before the conference ended, Fosdal thrice refused to negotiate an agreement.

During the first week in June, John Zancanero, President of the Milwaukee Building and Construction Trades Council, telephoned Fosdal in an effort to persuade the Company to become a Union contractor. Fosdal asked for certain information about "total gross cost" and hospitalization coverage. In his second call, Zancanero asked Fosdal to meet but Fosdal requested a postponement while the Company auditor was away. When Zancanero called Fosdal the third time to relay the Blue Cross information, Fosdal again declined to meet with Zancanero, saying that Mr. Mock should meet the employees to answer their questions.

While Zancanero was trying to persuade Fosdal to negotiate a Union contract, the Company's agent, Leonard Kannenberg, discussed the employees' demands directly with them. On June 29th, after bargaining directly with them, the Company gave its employees wage increases, additional vacation benefits and fully paid insurance coverage.

The trial examiner concluded that the Company violated Section 8(a) (1) of the Act (29 U.S.C. Sec. 158(a) (1)) by dealing directly with its employees concerning their wages, hours and working conditions and by unilaterally granting them economic benefits in an effort to undermine the Union's majority. The examiner also concluded that the Union was the representative of these employees and that the Company's refusal to bargain with the Union on May 26th and thereafter violated Section 8(a) (5) (29 U.S.C. Sec. 158(a) (5)). The Board approved the findings and conclusions of the examiner and adopted his recommended order that the Company cease and desist from the unfair labor practices found and from interfering with its employees' statutory rights. The order also required the Company to bargain collectively with the Union and to post appropriate notices. 153 NLRB No. 2.

The Board accepted the Company's argument that the proper bargaining unit should include three additional production and maintenance employees as well as the seven electricians who had signed the Union's cards. The Company contends that two of the seven Union cards were invalidly signed. If so, the Union would not have a majority status. These were dual purpose cards, providing in pertinent part:

"I WANT AN NLRB ELECTION NOW! AUTHORIZATION FOR REPRESENTATION

"I authorize the International Brotherhood of Electrical Workers, to represent me in collective bargaining with my employer."

At the hearing, two of the employees, Granger and Anderson, stated that they signed these cards to obtain an NLRB election and did not intend to authorize the Union to represent them in collective bargaining. Each had completed a year of college and admitted reading the cards. Union agent Mock testified that he told all seven employees that the cards were to be used for two purposes, namely, for bargaining authorization and possibly for an NLRB election. The trial examiner chose to credit Mr. Mock's credibility, characterizing him as "a reliable witness." Questions of credibility are of course for the Board and not for re-

viewing courts, so that Mr. Mock's credited testimony is conclusive here. Joy Silk Mills v. National Labor Relations Board, 87 U.S.App.D.C. 360, 185 F.2d 732, 740 (1950) certiorari denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350; Revere Camera Co. v. National Labor Relations Board, 304 F.2d 162, 164 (7th Cir.1962). There has been some criticism of dual purpose cards,* but we find nothing ambiguous about the cards involved here. Their bold-face caption covers authorization for representation as well as for an election, and their text authorizes the Union "to represent me [the signer] in collective bargaining with my employer." Substantially similar cards have been judicially approved. National Labor Relations Board v. C. J. Glasgow Co., 356 F.2d 476, 478–479 (7th Cir.1966); International Union UAW v. National Labor Relations Board, 363 F.2d 702, 704 (D.C.Cir.1966). The contrary views expressed in National Labor Relations Board v. Peterson Bros., Inc., 342 F.2d 221 (5th Cir.1965), have been expressly rejected by this Court and by the Court of Appeals for the District of Columbia in the *C. J. Glasgow Co.* and *International Union, UAW* cases. Not only are these cards unambiguous on their face, but we find there were no misrepresentations as to their purpose. Because we credit the validity of the cards of seven employees of the unit of ten, we agree with the Board that the Union did enjoy a majority status commencing on May 25, 1964. It is noteworthy that at the May 26th meeting with Mock and in the subsequent conferences with Zancanero, Fosdal did not dispute the Union's claim of majority support, so that the Company may not now persuasively claim that its refusal to bargain was based on a good faith doubt of the Union's majority status. National Labor Relations Board v. C. J. Glasgow Co., 356 F.2d 476, 479 (7th Cir.1966); Happach v. National La-

bor Relations Board, 353 F.2d 629, 630–631 (7th Cir.1965); National Labor Relations Board v. Elliott-Williams Co., 345 F.2d 460, 463–464 (7th Cir.1965); National Labor Relations Board v. Economy Food Center, Inc., 333 F.2d 468, 472 (7th Cir.1964).

■■ The Company next asserts that it did not refuse to bargain because the Union designated a craft unit of seven electricians instead of a production and maintenance unit of ten employees. Fosdal never refused to bargain on the ground that the proper unit was a production and maintenance unit of ten rather than a craft unit of seven. However, the examiner and Board accepted the Company's argument at the hearing that the proper bargaining unit consisted of the ten employees. We agree with the Board that adding the three employees to the previous seven was an insubstantial variance. The essential nature of the unit was not changed. All ten performed substantially similar work, and the majority status of the unit was unaffected by changing the unit from seven to ten, inasmuch as seven employees had validly signed the dual purpose cards. Industrial Union, etc. v. National Labor Relations Board, 320 F.2d 615, 617–618 (3rd Cir.1963), certiorari denied, Bethlehem Steel Co. v. N. L. R. B., 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472; Sabine Vending Co., Inc., 146 NLRB 946, 956; Galloway Mfg. Corp., 136 NLRB 405, 408–409, enforced National Labor Relations Board v. Galloway Mfg. Corp., 312 F.2d 322 (5th Cir.1963); United Butchers Abbatoir, Inc., 123 NLRB 946, 956. In these circumstances the Company was not excused from its statutory obligation to bargain with the Union.

■ The Company also asserts that it was excused from bargaining because the Union supposedly gave it a choice of election or bargaining and never made

---

* See National Labor Relations Board v. Peterson Bros., Inc., 342 F.2d 221, 225 (5th Cir. 1965); National Labor Relations Board v. C. J. Glasgow Co., 356 F.2d 476, 480–481 (dissenting opinion) (7th Cir. 1966); International Union of Electrical, etc., Workers v. National Labor Relations Board, 122 U.S.App.D.C. 145, 352 F.2d 361, 363–365 (concurring opinion) (1965), certiorari denied, SNC Mfg. Co. v. N. L. R. B., 382 U.S. 902, 86 S.Ct. 235, 15 L.Ed.2d 155.

an unequivocal bargaining demand. But it suffices if there is a "clear communication of meaning, and the employer understands that a demand is being made" (National Labor Relations Board v. Barney's Supercenter, 296 F.2d 91, 93 (3rd Cir.1961)). "Nor must the request to bargain be in *haec verba*, so long as there was one by clear implication" (Joy Silk Mills v. National Labor Relations Board, 87 U.S.App.D.C. 360, 185 F.2d 732, 741 (1950), certiorari denied, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350). That test is met here, for at their May 26th session Mock showed Fosdal a sample contract, answered Fosdal's detailed questions about it, and three times unsuccessfully asked him to negotiate a contract instead of forcing the Union to call for an election. Similar requests to reach an agreement were made later by Zancanero and ignored by Fosdal. The refusal to negotiate the terms of a contract here resembles the refusal to recognize the union in National Labor Relations Board v. Elliott-Williams Co., 345 F.2d 460, 463–464 (7th Cir.1965), where this Court rejected a similar argument based on choice of election or recognition. In the other judicial opinion relied upon by the Company, the court held the union's approach to the company was simply laying the basis for an election, whereas here the Union definitely requested Fosdal to negotiate a contract. See National Labor Relations Board v. Rural Electric Co., Inc., 296 F.2d 523, 524, 525 (10th Cir.1961). In that case the court observed that there must be "a fairly clear request to bargain and a fairly clear refusal of such request." These standards were satisfied here.

■ Respondent does not seriously contest the validity of the findings, conclusions and order with respect to a violation of Section 8(a) (1) of the Act (29 U.S.C. § 158(a) (1)). Its brief states only that "since the Union never enjoyed a majority status, the Respondent's meetings with its employees during June were likewise not in violation" of Section 8(a) (1). Having already

determined that the Union did enjoy a majority status on May 25th and thereafter, we need only add that the Board properly concluded that the Company's June activities seeking to undermine the Union were in violation of Section 8(a) (1).

In sum, we agree with the Board and therefore enforcement of its order is granted.