NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AMERICAN OIL COMPANY, a Maryland corporation, Respondent.

No. 15924.

United States Court of Appeals Seventh Circuit.

Nov. 8, 1967.

Rehearing Denied Jan. 9, 1968.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Clarice W. Feldman, Atty., N.L.R.B., Washington, D. C., John R. Tadlock, James J. Cronin, Denver, Colo., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Solo-

mon I. Hirsh, Atty., N.L.R.B., for petitioner.

Karl H. Mueller, Fort Worth, Tex., Donald L. Hastings, G. S. Spindler, Chicago, Ill., Harold E. Mueller, Fort Worth, Tex., for respondent.

Before SCHNACKENBERG, CASTLE and FAIRCHILD, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

We are asked by the National Labor Relations Board, petitioner, to enforce its order requiring the American Oil Company, a Maryland corporation, respondent, to *inter alia* bargain collectively with the charging union, Oil, Chemical and Atomic Workers International, as the representative of the operating and maintenance employees of respondent, including so-called *process supervisors*.[1]

The primary question is whether certain employees of respondent were non-supervisory employees (and therefore subject to collective bargaining contracts), as found by the Board, or whether they were supervisors within the definition of § 2(11) of the National Labor Relations Act, as amended, 29 U.S.C. § 152(11), which reads:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

The record shows that on September 29, 1964, J. A. Norgaard, manager of the refinery of respondent, issued a bulletin entitled:

Stillmen, Treaters, Pumpers, Engineers on No. 5 P.S., No. 2 FCU, Ultraformer, Central Pump House, Poly Plant, Alky Plant, Boiler Room, Detergent Additives Plant, Sulfurizing Plant, and Asphalt Plant.

This bulletin classified the subject employees as process supervisors, and stated: "They have and shall have and exercise the following authority, duties, and responsibilities:

"1. Responsibility to direct the work of the employees on his shift and by the use of independent judgment and discretion to determine which work shall be done and how, when and by which employees it shall be done in starting up, shutting down, operating, and controlling of the unit or facility and in so doing to make work assignments and to issue orders and instructions to such employees in behalf of the Company with which they are required to comply.

"2. To supervise, observe, inspect, and evaluate the work and conduct of the employees on his shift and to make proficiency and other reports concerning such employees and to make recommendations for increases, advancements, etc., based thereon which shall be given particular consideration and weight.

"3. To recommend effectively which employees shall work on his shift.

"4. To have immediate and direct charge of the unit or facility to which assigned in respect to access thereto by the employees on his shift and all other employees.

"5. To grant permission to employees on his shift to leave or absent themselves from the unit or facility and from their usual or regularly assigned areas or places of work.

"6. To entertain and adjust grievances and complaints of the employees on his shift which arise during such shift and which concern working conditions and relations with other employees and with the Company and otherwise to provide for and to main-

---

1. The Board's decision and order are reported in 160 NLRB 46.

tain the orderly, harmonious, and efficient working together of such employees in the accomplishment of the work to be done.

"7. To administer appropriate discipline in accordance with prescribed procedures."

Norgaard went on to state in the bulletin:

"This bulletin is published for the purpose of clarifying and establishing the position and supervisory status of the subject employees *who* in addition to the foregoing *shall continue to have and exercise the authority, duties, and responsibilities heretofore established.*" (Italics supplied.)

He gave each process supervisor a copy of that bulletin and a letter regarding his duties, saying, *inter alia*, that this "[your position] has necessitated your direction and control of the other employees on your shift."

The next day a copy of the bulletin was sent all employees with an accompanying letter stating therein, *inter alia*, "in order to clarify for all employees the action we have taken."

Contemporaneously, Norgaard held meetings in which he explained to the process supervisors and other supervisors their duties and responsibilities. He explained the benefits which would follow their classification and stated that other meetings would be held.

Considerable evidence was received indicating the advantages accruing to the supervisors in the way of salary, working conditions and personnel relationships with the business of respondent.

■ Our consideration of these facts, however, leaves little question that, while these supervisors have authority to release their operators from work and permit them to leave the unit during their working hours, there is no evidence of their alleged authority to discharge an employee. We are impressed by the fact that, in the parts of the record cited by respondent's counsel, there is actually not one instance of a process supervisor discharging an employee, exercising any of the other indicia of supervisory authority, or indicating that in actual practice any of these employees was regarded as having authority to do so. We are therefore persuaded that we have no right to set aside the Board's decision that the process supervisors were not supervisors within the meaning of the act.

■ We believe that in reaching its determination of this issue, a large measure of informed discretion must be permitted to the Board. N.L.R.B. v. Elliott-Williams Co., 7 Cir., 345 F.2d 460, 463 (1965).

■ Certainly in determining the legal status of employees, a question of fact is involved. Thus on this primary question of fact, we are required by the record before us to sustain the Board's order. We do so and direct that it be enforced.

Order sustained and enforced.

FAIRCHILD, Circuit Judge (concurring).

In affirming the board's decision that the so-called process supervisors are not supervisors within the meaning of section 2(11), the fact that they are only in charge of 1 to 3 operators has some significance, along with other facts mentioned in the opinion by Judge SCHNACKENBERG. Further, some operators are not under the control of process supervisors and some process supervisors do not always have operators working under them. Had the board found for the company there would be 47 "supervisors" for 105–115 employees. It appears that the work actually performed by the men involved did not change substantially at the time of the September 29 bulletin.

The board could well deem these men, though called "process supervisors", not part of management.