**ATLAS ENGINE WORKS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 17881.

United States Court of Appeals
Sixth Circuit.

June 28, 1968.

Francis J. Gallagher, Toledo, Ohio, Shumaker, Loop & Kendrick, William R. Radford, Toledo, Ohio, Butzbaugh, Page & Byrns, Philip B. Willauer, Benton Harbor, Mich., on brief, for petitioner.

Ronald R. Helveston, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Janet Kohn, Atty., N.L.R.B., Washington, D. C., on brief, for respondent.

Before PHILLIPS, McCREE and COMBS, Circuit Judges.

PHILLIPS, Circuit Judge.

The decision and order of the Board, reported at 163 N.L.R.B. No. 61, required the employer to bargain with the Union upon the ground that the Union had a majority of valid authorization cards on the day that it demanded recognition as bargaining agent. The Union later lost a Board supervised election by a vote of 81 to 67.

The employer has filed a petition for review and to set aside the Board's order. The Board has filed a cross-petition for enforcement.

The Board held that the employer was guilty of various unfair labor practices in violation of § 8(a) (1) of the Act, which dissipated the Union's majority between the time of its demand for recognition and the day of the election. It further held that the employer violated § 8(a) (5) of the Act by refusing to bargain with the Union after a majority of the employees had designated the Union as their bargaining representative.

The authorization cards are unambiguous.[1] No reference to an election ap-

---

1. The cards used by the Union contained the following language:

"TEAMSTERS LOCAL 20 ORGANIZING COMMITTEE
Affiliated with the I.B. of T., C., W. & H. of Am.
"I HEREBY ACCEPT MEMBERSHIP IN TEAMSTERS LOCAL NO. 20, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and of my own free will hereby authorize the above Union to act for me as a collective bargaining agency in all matters pertaining to rates of pay, wages, hours of employment, or other conditions of employment."

The card then provided spaces for the employee to both print and sign his name, and for date, address, telephone number, name of employer, social security number, class of work, and hourly rate. At the bottom appeared the legend: THINK UNION—TALK UNION—BE UNION.

pears at any place on the face of the cards.

During the organizational campaign the Company's personnel director spoke to both shifts of employees, warning that the cards being circulated by the Union were membership cards, not election authorization cards. He stated: "Membership cards mean just that— membership." He asserted that the Union may be trying to obtain recognition without an election, saying: "They have not told you the kind of card which you are signing. The card which they are asking you sign is a bona fide acceptance of membership in Teamsters Local Number 20."

At two mass meetings of employees the Union's business agent explained three alternative methods by which the Union might secure recognition if sufficient authorization cards were signed: (1) by an impartial third-party check of the cards; (2) by a private election under the auspices of local citizens; or (3) by a Board representation election. The Union later sought recognition through the first and third alternatives.

In demanding recognition both orally and in writing, the Union claimed that it possessed authorization cards signed by a majority of employees in the unit. In responding to the Union's demand, the company expressed no doubts as to the Union's majority status. The record establishes that the Union held a majority of signed authorization cards on the day it demanded recognition.

The Board made a finding of fact to the effect that the Company's rejection of the Union's demand was not the product of a good faith doubt, but was motivated by a desire to gain time "to stifle the union;" that the Company immediately set in motion a systematic campaign to prevent collective bargaining and to insure continuation of the non-union status it had enjoyed for twenty years; and that the dissipation of the Union's majority was accomplished by numerous unfair labor practices outlined in detail in the Board's reported decision.

We find that the decision and order of the Board are supported by substantial evidence on the record as a whole and that enforcement should be granted. N.L.R.B. v. Swan Super Cleaners, Inc., 384 F.2d 609 (6th Cir.); Dayco Corp. v. N.L.R.B., 382 F.2d 577 (6th Cir.); N.L.R.B. v. Cumberland Shoe Corp., 351 F.2d 917 (6th Cir.), N.L.R.B. v. Winn-Dixie Stores, Inc., 341 F.2d 750 (6th Cir.) cert. denied, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74.

The company's petition to review and set aside the order of the Board is denied. Enforcement is granted.