THRIFT DRUG COMPANY OF PENN-
SYLVANIA, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 18216.

United States Court of Appeals
Sixth Circuit.

Dec. 11, 1968.

William A. Krupman, New York City, for petitioner; Jackson, Lewis & Schnitzler, New York City, Robert Lewis, William A. Krupman, on brief; Daniel L. Bernstone, Martin F. Payson, New York City, of counsel.

Joseph A. Yablonski, N. L. R. B. Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty. N. L. R. B., Washingon, D. C., on brief.

Before O'SULLIAN, EDWARDS and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Petitioner in this case seeks to set aside the findings and the bargaining order entered by the National Labor Relations Board, and the Board in turn seeks enforcement of its order. The conclusions of law, as set forth in the Trial Examiner's decision and as adopted by the Board, are as follows:

"1. All employees at Respondent's Kenosha, Wisconsin, store, excluding the store manager, assistant store manager, lunch counter manager, professional employees, guards, and supervisors as defined in the Act,[1] constitute an appropriate unit for the purposes of collective bargaining within the meaning of Section 9(b) of the Act.

"2. At all times since August 24, 1966, the Union[2] has been the duly designated bargaining representative of the aforesaid collective-bargaining unit.

"3. The Respondent has interfered with, restrained, and coerced its employees in the exercise of their rights guaranteed in Section 7 of the Act, in violation of Section 8(a) (1), by threat-

[1] National Labor Relations Act, 29 U.S.C. §§ 151–168 (1964).

[2] Retail Clerks International Association, Local 526, AFL–CIO.

ening them that the Kenosha store or its fountain department would be closed down or that they would lose their store or food discounts by promising them wage increases and other benefits by coercively interrogating them as to how they were going to vote, or if they had attended union meetings, by intimidating them through its orders to reject applications for employment from prounion applicants, and by telling them that their attendance at union meetings had been observed and noted.

"4. By failing and refusing on August 26, 1966, and at all times thereafter, to recognize and bargain with the Union as the collective-bargaining representative of the employees in the aforesaid unit, and by unilaterally changing the wages of employees in October 1966, without notice to or consultation with the Union, the Respondent has engaged in unfair labor practices in violation of Section 8(a) (5) of the Act.

"5. The aforesaid unfair labor practices affect commerce within the meaning of Section 2(6) and (7) of the Act."

Petitioner does not contest the section 8(a) (1) violation findings in this proceeding. It also concedes the fifth of the conclusions above, reserving most of its argument for three contentions:

1. The bargaining order was not justified because in fact the union never had a valid card majority.

2. The bargaining order was not justified because petitioner had a good faith doubt of the union's majority.

3. The bargaining order was not justified because under the facts of this case it was an inappropriate remedy.

 The Board found that the union had ten authorization cards out of an appropriate bargaining unit of fifteen when it made its demand for bargaining rights on August 24, 1966. Petitioner's primary argument attacking this majority is that a number of cards should be held to be invalid because of solicitor misrepresentations.[3] In this regard petitioner relies upon this court's holding in NLRB v. Swan Super Cleaners, Inc., 384 F.2d 609 (6th Cir. 1967):

"We think it right now to say that we do not consider that we have announced a rule that only where the solicitor of a card actually employs the specified words 'this card is for the *sole* and *only* purpose of having an election' will a card be invalidated. We did not intend such a narrow and mechanical rule. We believe that whatever the style or actual words of the solicitation, if it is clearly calculated to create in the mind of the one solicited a belief that the *only purpose. of the card is to obtain an election,* an invalidation of such card does not offend our Cumberland rule [NLRB v. Cumberland Shoe Corp., 351 F.2d 917 (6th Cir. 1965)]." Id. at 618. (Emphasis in original.)

In our instant case there is no claim that the cards themselves contained any ambiguity or misrepresentation. We have examined the claimed misrepresentations of the solicitors. Taking into account our court's limited function in review of NLRB findings of fact and

---

3. Two of these cards are also challenged by petitioner on the ground that the witness who testified she "recognized" the signatures had not been properly qualified to so testify. The statute under which NLRB hearings are authorized provides in part: "Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure * * *." 29 U.S.C. § 160 (b) (1964). Some courts looking at the

"so far as practicable" language have held that "the Board is not required to observe the legal rules of evidence as are common law courts." NLRB v. W. B. Jones Lumber Co., 245 F.2d 388 (9th Cir. 1957). See also Sardis Luggage Co. v. NLRB, 234 F.2d 190 (5th Cir. 1956). However, in view of the fact that the two cards would not eliminate the union's majority status, we do not find it necessary to pass on petitioner's contention that the Trial Examiner's receipt of them in evidence was error.

inferences based thereon, we do not find any language which compelled the Board to hold that a particular solicitor was seeking to convey "a belief that the *only* purpose of the card is to obtain an election."

We now turn to appellant's second and third substantial contentions pertaining to "good faith doubt" and "inappropriate remedy." These we believe to be closely related and hence they will be considered together.

This record shows that close on the heels of the union's August 24, 1966, bargaining demand (and even before its refusal by petitioner), one of the petitioner's employees heard the store manager say: "I don't know what's the matter with these girls. They won't believe me when I tell them they're going to close the store, if the union gets in, and we'll all be out of a job." This same witness also testified to another conversation with this same store manager shortly before the NLRB election:

"Well, he asked me did I hear—he said, 'You know, the election is October 12th.' And I said, yes, I did. And he said, 'Well, maybe you'd like to come in and work for a couple of hours on the 12th,' because that was my day off. And he said, 'You have to be in the store to vote.' And I said, 'Well, don't worry, I'll come in to vote.' And he said, 'Well, I thought you might like to get some time in before the 12th, because if the union gets in you're not going to get any time in after the 13th.'"

The record is replete with similar testimony from other witnesses. It also contains support for the Trial Examiner's finding of promises of wage increases. One witness testified that midway in the election campaign the store manager told three employees: "I'm planning to give you a raise in October, or see you get a raise in October, if the union doesn't come in, and I'm thinking of a dollar and a half."

All in all, the course of conduct shown on the part of petitioner immediately after receipt of the union's demand for bargaining rights was that of an employer determined to defeat unionization regardless of the wishes of the employees and completely without regard to the law. The violation of the NLRA found in this case can by no means be characterized as "borderline" section 8(a) (1) violations as in NLRB v. Ben Duthler, Inc., 395 F.2d 28 (6th Cir. 1968), or as 8(a) (1) violations "without more" as in Lane Drug Co. v. NLRB, 391 F.2d 812 (6th Cir. 1968). Indeed, it seems remarkable on this record that the union lost the election by the close vote of seven votes for the union to eight against. The Trial Examiner and the Board had ample reason to conclude that petitioner's course of conduct represented rejection of collective bargaining rather than a good faith doubt of the union's majority status.

Under the factual circumstances of this case, we believe that the findings and conclusions of the Board have substantial support in this whole record. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Enforcement of the bargaining order may well be the only way to remedy the illegal course of conduct deliberately chosen by petitioner. NLRB v. Winn-Dixie Stores, Inc., 341 F.2d 750 (6th Cir.), cert. denied, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965); NLRB v. Cumberland Shoe Corp., 351 F.2d 917 (6th Cir. 1965); NLRB v. Delight Bakery, Inc., 353 F.2d 344 (6th Cir. 1965).

Appellant cites and relies on the Fourth Circuit view on NLRB bargaining orders expressed in NLRB v. S. S. Logan Packing Co., 386 F.2d 562 (4th Cir. 1967). This court has, however, considered and rejected the Logan's holding. NLRB v. Atco-Surgical Supports, Inc., 394 F.2d 659 (6th Cir. 1968).

Enforcement of the Board's order is granted.